## HINKLER v EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

Ohio Appeals, 1st Dist, Hamilton Co

No 5429. Decided December 12, 1938

Harmon, Colston. Goldsmith & Hoadley, Cincinnati, and Henry B. Street, Cincinnati, for appellee.

Maxwell & Ramsey, Cincinnati, for appellant.

## OPINION

By HAMILTON, J.

The plaintiff, appellee in this appeal, brought an action against the defendant, appellant in this court, seeking to recover on two certificates of insurance, issued on the life of her husband, who died November 18th, 1934. She was named the beneficiary in both certificates.

The certificates were issued upon two group insurance policies carried by The Rudolph Wurlitzer Company on its employes with said defendant company.

One of the group insurance policies, or master policies as it could be designated, was a contributing policy, in which the employes contributed a certain sum toward the payment of the premiums. On the other policy the Wurlitzer Company was to pay all the premiums.

Hinkler died while he was still an employe of the Rudolph Wurlitzer Company, in the capacity of manager of one of its stores. On the death of Hinkler, the beneficiary, plaintiff in the case, filed proofs of death with the defendant company, The Equitable Life Assurance Society. Payment was refused under the claimed ground that the policy was, by agreement with the Wurlitzer Company, terminated on the 1st day of November, 1934.

The case was tried to the court, a juror having been withdrawn at the conclusion of the evidence. The court held the insurance in force at the time of the death of Hinkler, and that the beneficiary was entitled to recover the full amounts represented by the certificates, less the sum of $4.50, which the court found to be the amount chargeable to the decedent for premium payments.

The master policies were annual policies, and provided for the monthly payment of premiums.

It appears that the Wurlitzer Company and the Equitable Life Assurance Society considered the abandonment of the plan under which the master policies in question were issued and the promulgation of a new system of group insurance. The master policies had been taken out some time in the Spring and had been carried for some years. As above stated, these master policies were annual policies, and the attempted cancellation was made about the middle of the year, when the policies had several months to run for the current year, and premiums had been paid up to October, 1934. During the month of October and pending the negotiations for the new system between the Wurlitzer Company and the Assurance Society, the Wurlitzer Company paid the current monthly premium for October. The conference between the Wurlitzer Company and the Assurance Society regarding the cancellation of the old plan and the institution of a new plan occurred on the 25th of October, 1934. After the conference the Wurlitzer Company sent a bulletin to all its employes through all store managers and department heads to the effect that it had terminated the master policies in question as of November 1, 1934, and were putting into effect the new plan of insurance.

On October 29th, 1934, as above stated, the Wurlitzer Company paid the October premium on the master policies in question.

It is claimed by the defendant that under the circumstances the policies were not in force November 18th, 1934, upon which date the insured Hinkler died.

The contention of the plaintiff is, that the master policies carried a grace clause, which maintained the policies in full force and effect for the entire month of November. The grace clause is in the policies under the requirements contained in §9420, GC, and reads as follows:

"A grace of thirty-one days will be granted for the payment of every premium after the first, during which period the insurance hereunder shall continue in force * * * "

To carry out the provisions of the master policies certificates were issued to the several employes for the amount of their insurance. Two of them were issued to the decedent John L. Hinkler, and provided that:

"The Equitable Life Assurance Society of the United States hereby certifies that The Rudolph Wurlitzer Company * * * has contracted to insure the life of John L.

Hinkler for the sum of Five Thousand Dollars with The Equitable Life Assurance Society of the United States by a policy of group life insurance. * * * Beneficiary Marie L. Hinkler, wife."

That liability under the certificates and under the policies existed on November 18th, the date of the death of Hinkler, there can be no question, unless the insurer and The Wurlitzer Company could and did cancel the master policies as of November 1st, 1934. If the master policies were cancelled, then it must follow that the certificates were voided.

It is shown by the record that the Assurance Society and the Wurlitzer Company did agree that the master policies should be cancelled as of November 1st, 1934.

The first question for consideration then is, can the Assurance Society and the holder of the group policies cancel a policy without the consent of the insured. If the insured or the beneficiary under the certificates possessed a vested interest in the policies, then the insurer and the holder of the group policies, in this case the Wurlitzer Company, could not cancel the policies to the detriment of the insured or the beneficiary. Whether it be called a tripartite contract or a contract between two parties for the benefit of a third is immaterial, if a vested interest is present. And if vested interests are present these policies cannot be cancelled without the consent of those having such vested ·interests.

It is not claimed that the beneficiary, plaintiff in this case ever consented to any cancellation or change in the group insurance plan, affecting the policies in force. The claim that Hinkler, the insured, gave tacit consent because of his knowledge of the bulletin, which contained a notice of the cancellation as of November 1st, 1934, and did not make any objection, and that he filled out an application for insurance under the new plan· is sufficient to show his consent, is advanced by the Assurance Company. A consent to alteration of rights under a written contract must be by agreement of the parties upon sufficient consideration. Such agreement does not appear. Hinkler had the right to believe the master policies were in force under the grace clause. Nothing that he did would ·be inconsistent with his belief that they were still in force under the grace clause, and even with the notice of the cancellation as of· November 1st, 1934, he

may still have thought that under the statutes. the law, and the provisions of the policies themselves. that there would be an additional thirty-one days' grace.

Under the cases and the authorities, it would also be necessary for the beneficiary in the certificates, the plaintiff in this case, to have given her consent, if she had a vested right. This was so decided in the **Union Central Life Insurance Co. v Buxer, 62 Oh St, 385,** the first paragraph of the syllabus being:

"Where a husband procures insurance on his life payable to himself after a term of years, if he shall live so long, and if not, then to his wife at his death, and after paying premiums for some years gives a premium note which has a forfeiture clause therein more onerous, as against the interests of the wife, than the forefeiture clause in the policy, such forfeiture clause in the note will not avail the insurance company as against the wife, unless she assents thereto."

In the opinion the court said:

"Payment might be made in cash or by note as the parties should determine. As to his interest in the policy he could give a premium note with a forfeiture clause broader and more onerous than ·the forfeiture clause in the policy, but as she had a vested interest in the policy, in case she survived him, he could not affect her rights by giving such a premium note without her consent."

In other words, under the policies in question, the wife (the beneficiary) would have to consent in order to abandon and terminate the policies prior to their termination by reason of non-payment of premiums.

The master policies provided how these policies might be terminated, and read as follows:

"7. Terminations. The insurance under this policy upon the life of any employee covered by this contract shall automatically cease and determine upon the termination of such person's employment with the Employer in the specified classes of employees without regard to the cause of such termination, except that the Employer may elect that all employees who while insured hereunder are temporarily laid off or given leave of absence or are temporarily disabled, shall be considered to be in the employment of the Employer during such period

subject, in case of military or naval service, to the provision on the second page hereof. For purposes of insurance, re-employment will be classed as new employment and will be subject to all the requirements thereof and the issue of a new certificate.

"8. Optional Settlement. The Employer may, by written notice to the Society, elect to have the amount for which any employee's life is insured under this contract paid in a fixed number of payments to be made at intervals of not less than one month and covering a period not to exceed one year."

Thus, it will be seen that the policies could be terminated in two ways:—one, by ceasing to be an employee; and, the other, non-payment of premiums.

The policies were not forfeited by non-payment of premiums because of the grace clause. Nor were they forfeited by Hinkler's ceasing to be an employee, because he was an employee at the time of his death.

A vested interest is shown by the fact that the employee in severing his employment with the Company had certain options benefits under the policies, as shown in paragraph 8.

Enough has been said to show a vested interest in the deceased certificate holder and the beneficiary thereunder, plaintiff in this case, and that the insurer and the Wurlitzer Company could not cancel the policies during the year, and that the policies were in full force and effect during the time for which the premiums had been paid, which, of course includes the grace period under the statute and contained in the policies themselves. See also: **Manhattan Life Insurance Co. v Smith, 44 Oh St, 156**, paragraph 3 of the syllabus.

Our conclusion is, that the certificates under the policies were in force at the time of the death of the decedent, and that the plaintiff beneficiary is entitled to recover under the certificates for the full amount provided for therein, less the amount of premium apportionable to Hinkler's certificates, which the Assurance Company was entitled to deduct therefrom under the statutes.

The trial court held the amount retained by the Assurance Company on the question of premiums was the proportionate share of the decedent, to-wit: $4.50. Since recovery is had for the full amount of the certificates under the master policies, it would seem that the Assurance Company under the statutes could retain from its payments sufficient to discharge the cost of carriage during the grace period, which would be the total amount necessary for the carriage of the two certificates in suit, which would be not only the proportionate share of the insured, but the total amount of the premium for the coverage.

The judgment will therefore be modified in accordance with this opinion, and the judgment, as modified, will be affirmed.

ROSS, PJ, and MATTHEWS, J, concur.