FERDINAND KLOIDT, PLAINTIFF, v. METROPOLITAN LIFE INSURANCE COMPANY, DEFENDANT.

Decided April 21, 1939.

For the plaintiff, *Vincent L. Gallaher*.

For the defendant, *Starr, Summerill & Lloyd (Alfred E. Driscoll)*.

PALMER, S. C. C. This cause of action is submitted to the court by stipulation of certain facts, with exhibits, for the purpose of having a determination in the first instance of certain legal questions, which may make unnecessary a trial of the facts. However, the stipulation provides that in the event of the determination of the legal questions adversely to the defendant, then certain questions are to be submitted to the jury for determination as to the facts.

The stipulation is elaborate and detailed so that a recital of the facts therein set forth is unnecessary at the present time. However, for the intelligent comprehension of this

memorandum it will be necessary to recite and set forth some of the facts and portions of the exhibits detailed in the stipulation.

On September 1st, 1928, the defendant issued to the General Motors Corporation, hereinafter referred to as General Motors, its subsidiaries and affiliated companies, a "Group Insurance Policy" for the benefit of certain employes of General Motors, upon certain terms and conditions therein set forth. The plaintiff was not, at that time, eligible for any benefits as therein provided he being an employe of a dealer and distribution unit of General Motors, which units were not covered by the policy as issued.

By agreement between the assured and defendant and without notice to or the consent of any of the employes of General Motors this policy was subsequently amended upon nine successive occasions, which amendments covered a great variety of changes unnecessary to enumerate at this time. On March 11th, 1931, this group policy, by agreement between the defendant and the assured, was amended so as to bring within its provisions the plaintiff as an employe of a dealer and distribution unit, and which provided that the plaintiff should receive certain benefits thereunder. Plaintiff made application in accordance with the terms of the policy and a certificate was issued to him by the defendant.

The policy as originally issued called for monthly payments of premiums by the assured, General Motors, and was for the period of one year with provisions for annual renewal thereof. It contained a provision which limited the amount that the assured could collect from its employes as a part of the premium to be paid to the defendant, but the policy did not require the assured to collect these portions of premiums from its employes. At most it was a limitation upon the amount that the assured could collect from its employes.

The amendment of March 11th, 1931, contained the following provisions, a paraphrase of which were set forth in the certificate issued to the plaintiff:

"(c) *Total and Permanent Disability Benefits.* Upon receipt by the company of due notice and proof in writing that any employe has, (1) while insured hereunder, (2) prior

to his sixtieth birthday, and (3) after having been continuously insured hereunder for two full years, become totally and permanently disabled, as a result of bodily injury or disease, so as to be prevented thereby from engaging in any occupation and performing any work for wage or benefit, the company will discontinue the life insurance in force on the life of said employe and three months after receipt of such proof will commence to pay, subject to the terms hereof, in lieu of the payment of life insurance at his death, monthly installments as defined below, to the said employe or to any person designated by him for the purpose."

Effective as of May 1st, 1933, General Motors and the defendant again amended the policy by substituting for the provisions above quoted providing for the payment of total and permanent disability benefits during the lifetime of the injured employe, a new provision providing for the payment of the full amount of insurance after the death of the employe to the beneficiary named by the employe upon submission of due proof that the death of the employe insured thereunder had occurred within twelve months after the termination of his employment, and that during such period such employe had been continuously and totally disabled from engaging in any employment from the date of the termination of his employment.

The assured, General Motors, collected from and plaintiff paid to it, but not to the defendant, a portion of the cost of coverage for the plaintiff.

Prior to the effective date of said last amendment on May 1st, 1933, notice of the change of the proposed amendment was sent to and received by the plaintiff, and he was asked to return his original certificate in order that a new certificate might be issued to him showing the change in the provisions of the policy.

The plaintiff failed to surrender his certificate after receipt of notice of the change in the provisions of the policy, and on June 6th, 1933, he wrote a letter to the assured in which he stated that he was entirely satisfied with his insurance contract as originally written and that he desired to continue that contract without any change whatever.

The plaintiff alleged that he became totally and permanently disabled on June 12th, 1933, and on June 15th, 1933, wrote to the assured requesting a form for the submission of proof of his total disability, which form was sent to him and prepared and filed by him with the assured, who in turn forwarded it to the defendant. That thereafter, defendant sent to plaintiff another form for proof of disability, together with a request for a physical examination by a physician. This, of course, was subsequent to the effective date of the change in the provisions of the policy. Thereafter, defendant advised plaintiff that payments would not be made by reason of the fact as alleged that plaintiff did not become totally and permanently disabled at the time that such provisions were in effect under the policy of insurance involved.

This suit was then brought to recover the amounts alleged to be due and to have fallen due on October 1st, November 1st, December 1st, 1933, and January 1st, February 1st, March 1st, April 1st and May 1st, 1934.

The first question for determination is whether or not the defendant and General Motors Corporation, the assured, could amend the group policy issued September 1st, 1928, without the consent of any person insured thereunder, and whether the amendment of May 1st, 1933, was a valid exercise of power by said parties, and which amendment would be effective without the consent of any person insured thereunder by any previous amendment.

The argument on behalf of the plaintiff is that he was a party to the contract, namely, the insurance policy, and that the contract was made for his benefit, and that by reason of being a party to the contract and one of the class of persons for whose benefit the contract was made it could not be altered or changed as to any of its effective provisions so far as he was concerned without his consent, and he cites in support of this contention a number of cases, the first of which is the case of *Smithart* v. *John Hancock Mutual Life Insurance Co.,* 167 *Tenn.* 513; 71 *S. W. Rep.* (2d) 1059 (May 14th, 1934). The question for determination was as to the time of the filing of the proof of disability, which disability was alleged to have occurred while the insurance

was in force, but that the proof of such disability was not filed until the expiration of the period of the policy. The court, however, said that:

"But when, as here, the insurer issues its certificates to the employes and the latter contribute a portion of the premium paid by the employer there arises a definite contractual relationship between the insured employes and the insurer and the certificates become integral parts of the insurance contract. The group policy and the certificate are to be construed and enforced together."

The statement above made as to the contractual relationship between the employe and the insurer was not necessary to the decision of that case and is in conflict with the determination of most of the other courts. It is unquestionably true that the group policy and the certificates are to be construed and enforced together, but that in itself does not constitute any contractual relationship between the employe and the insurer. The certificate is merely evidence in the possession of the employe as to the kind and nature of insurance to which he may be entitled under the terms and conditions of the master policy.

In the case of *Williams* v. *John Hancock Mutual Life Insurance Co.,* 277 *N. Y. Supp.* 429, the plaintiff was insured as an employe under a group policy for a certain sum of money. After the accident, resulting in the disability alleged to have been incurred, there was an attempt to change the amount of insurance available to the plaintiff under these conditions. The plaintiff had no notice of the attempted decrease. The court concluded that the attempted change in the amount of insurance was ineffective if made without the consent of the insured employe, and could not be effective unless made at the time of a renewal term as provided for in the clause of the policy relating to renewals. The opinion treated the employe as one of the contracting parties. This case was reversed by the Appellate Division of the Supreme Court decided November 7th, 1935, in the case of *Williams* v. *John Hancock Life Insurance Co.,* 283 *N. Y. Supp.* 87. The case was reversed upon the ground that the testimony did not indicate such a total and permanent disability as

was contemplated by the insurance policy which was the basis of the suit. The court, however, said:

"In view of the conclusion we have reached we may disregard other points urged by the appellant. The judgment from which appeal was taken should be reversed on the law and facts with costs, and the complaint dismissed with costs. Certain findings of fact and conclusions of law are disapproved and reversed and a new conclusion made."

It is impossible to determine from this opinion as to what new conclusions of law were reached by the court. The opinion dealt solely with the question as to whether the testimony justified the conclusion of total and permanent disability on the part of the plaintiff, and stated nothing as to any new conclusions of law, so that it is impossible to determine whether or not the statement in the case as to the contractual relationship existing between an employe and the insurance company was approved or not.

In the case of *Butler* v. *Equitable Life Assurance Society*, 93 *S. W. Rep.* (*2d*) 1019, the plaintiff's decedent held a certificate issued by the defendant under a group life insurance policy. The certificate provided for total and permanent disability payments. The defense was that there had been a cancellation of the permanent disability provisions of the policy by an agreement between the employer and defendant prior to the incurring of the permanent disability by the plaintiff's decedent. Further, that the deceased had been given notice of this change in the policy resulting in the elimination of the permanent disability provisions. The court said:

"The scope of the contract contemplates more than a mere contract between parties for the benefit of a third party, in that the master contract provides first, for the consent evidenced by application; and second, a consideration to be paid by the third party for the benefits provided for in the contract. Logical conclusions as to such a contract, we conclude, lead to the conclusion that when a third party makes application and pays the consideration as expressed in the master policy and the same is accepted by the parties in accordance with the terms of the master contract, that such

payment and such acceptance endows the third party with a vested interest. * * *

"After a careful study of the authorities we conclude that as to such a group policy as is involved in this case wherein the group policy itself imposes burdens upon the insured employe and provides for a consideration to be paid by the employe for the protection and benefits he secures thereunder, then in such event such an insured is entitled to notice of cancellation."

In the case at bar the stipulation clearly shows notice of the cancellation of the policy and the substitution of new provisions, which notice the plaintiff admits he received prior to the effective date of the new provisions.

"We conclude as to the contract before us that if the insured employe is given notice and is awarded full opportunity to take the benefits of the clause 'termination and conversion' that his consent is not a prerequisite to cancellation."

Here would seem to be somewhat of a contradictory statement as to the conclusions reached by the court. But in either event in the case at bar the plaintiff had full notice of the cancellation and an opportunity to take advantage of the other provisions of the master policy; and further, the policy provides for the payment of premiums by the employer and contains only a limitation as to the portion of the premium that the employer may call upon the employe to pay.

The case of *Myerson* v. *New Idea Hosiery Co., 217 Ala. 153; 115 So. Rep. 94*, is also cited, but this case was one against the employer on a theory of negligence and such statements from the opinion as are quoted in the brief for plaintiff have no application to the present case.

In the case of *Davis* v. *Metropolitan Life Insurance Co., 32 S. W. Rep. (2d) 1034*, decided November 28th, 1930, the plaintiff, as beneficiary named in a certificate issued by the defendant to her husband under a group insurance policy issued to the city of Knoxville, brought suit to recover the amount alleged to be due on the certificate. The policy provided that the city of Knoxville should pay monthly in advance a premium based on the number of employes covered

and the policy also limited the proportion of premiums that could be collected by the city from the various employes. The city became dissatisfied with the policy and canceled it and thereupon procured another policy from another company. The plaintiff's decedent died one day before the expiration of the grace period allowed in the policy. The grace period, the court held, applied only to the times when the policy was to be continued and not as to a time when the policy had been canceled. The court said as follows:

"We are persuaded that the power of cancellation of this policy applied for and issued to the city of Knoxville was in the city and that its action was binding upon the several individual employes holding certificates issued thereunder. It appears that the courts which have considered these group policy contracts have held that the contracting parties were primarily the employer and the company  *  *  *  and the insuring company has no direct contractual relationship with the several individual employes. The rights which the employes acquire are incidental."

The court concludes that the employer has the right to cancel the contract at any time and that the employes have no interest whatsoever in the policy after its cancellation.

"The city and the company are the original contracting parties. It is the employer, here the city, which promised to pay the premiums collected in turn *pro rata* from its several employes. No individual employe could have exerted a right to continue the policy independent of the employer. It follows that he could not have resisted a cancellation of the group policy by agreement between employer and the company."

In the case of *Beecey* v. *Travelers Insurance Co.*, 166 *N. E. Rep.* 571, the suit was by the beneficiary named in a certificate issued under a group insurance policy by the defendant. The policy provided that upon the termination of employment the insurance was to cease, but that the certificate holders would be entitled to have issued to them within thirty-one days after the termination of his employment insurance in one of the forms customarily issued by the company, in an amount equal to the amount of his protection under the

group insurance policy at the time of such termination. It was contended that this conversion privilege gave the beneficiary a vested right, but the court held to the contrary and found that the employe was not a party to the contract. It further held that the employe was chargeable with notice of the terms of the master policy and that his failure to apply for the converted insurance within the specified time barred his right to such insurance, and that there was no need of any notice of cancellation from the insurance company.

The case of *Boseman* v. *Connecticut General Life Insurance Co.,* 301 *U. S.* 196; seems to be controlling. It was decided April 26th, 1937. Plaintiff made application for insurance under a group policy issued by the defendant to the Gulf Oil Corporation in which he agreed to be bound by the rules governing the insurance and authorized a deduction from his salary each month of a sum to cover a part of the premiums to be paid by the oil corporation. This application was sent to the oil corporation and not to the defendant. The policy was for the term of one year with provisions for renewal. The insurance was to terminate as to each employe upon the termination of his employment, and stated:

"The policy and the application of the employer and the applications of the employes, if any, shall constitute the entire contract between the parties."

The policy provided that no claim for permanent total disability incurred by any employe during his period of employment should be paid after the termination of such employment, unless such employe gave written notice of such disability to the company during the said period of employment, or within sixty days thereafter. The controversy was as to whether or not this provision, valid under the law of Pennsylvania, in which state the contract was written, should be enforced, or a provision of the law of Texas, which provided that any such stipulation fixing the time within which such notice should be given at a period of less than ninety days, was valid. The plaintiff in this case did not give the notice of disability within the sixty-day period provided by the policy:

"Petitioner and other insured employes were not parties

to nor did they have any voice in the negotiation or consummation of the contract. The terms of the policy were settled by the oil corporation and respondent. Eligible employes were given opportunity upon specified conditions to have insurance by giving payroll deduction orders approved by their employer. The policy did not of itself insure petitioner or any other person. It merely made available specified insurance to certain employes. For the payment of premiums the insurer looked only to the corporation. The latter, for the benefit of its insured employes, assumed the burden of paying to the insurer premiums to which they, by the deduction orders, had contributed. * * *

"But the certificate is not a part of the contract of or necessary to the insurance. It is not included among the documents declared 'to constitute the entire contract of insurance.' Petitioner was insured on the taking effect of the policy long before the issue of the certificate. It did not affect any of the terms of the policy. It was issued to the end that the insured employe should have the insurer's statement of specified facts in respect of protection to which he had become entitled under the policy. It served merely as evidence of the insurance of the employe. Petitioner's rights and respondent's liability would have been the same if the policy had not provided for issue of the certificate.

"Employers regard group insurance not only as protection at low cost for their employes, but also as advantageous to themselves in that it makes for loyalty, lessens turn over and the like. When procuring the policy, obtaining applications of employes, taking payroll deduction orders, reporting changes in the insured group, paying premiums and generally in doing whatever may serve to obtain and keep the insurance in force, employers act not as agents of the insurer, but for their employes and for themselves."

The case of *Magee* v. *Equitable Life Assurance Society,* 244 *N. W. Rep.* 518, decided October 19th, 1932, was a suit by the plaintiff against the defendant to recover on a certificate issued under a group life insurance policy. The group policy was issued by the defendant to the Louisville Gas and Electric Company and subsequently changed to

cover employes of the Standard Gas and Electric Company. The court said:

"The contract was between the defendant and the employer, and except so far as the third person for whose benefit the contract was made could take advantage of the contract of the employer, there was no contractual relationship between the defendant and these third persons. It will be noted that so far as the defendant is concerned this was not an insurance policy carrying a cash surrender value, or extension of insurance because of dividends or earnings as in an ordinary life insurance policy. The beneficiary had no interest in it except that if discharged he could convert it into another form of life insurance policy if an application was made within a specified time. So far as John Magee is concerned the employer canceled the insurance without notice unless he was discharged, and discharge would be notice. So far as the defendant is concerned the rights of the parties were fixed by the contract made with the employer."

Also the court held that if the employe was discharged, that was notice requiring him to take advantage of any conversion privilege that there might be in the policy.

I am, therefore, of the opinion that under the great weight of the authorities in this country, and the logic and reason to be deduced from the stipulated facts and exhibits in this case, that the defendant and assured, General Motors, could, without notice to the plaintiff, make effective the changes and alterations of the original contract of insurance as set forth in this case.

The next question submitted to me is "If the defendant and General Motors Corporation had the power to amend the group policy without plaintiff's consent, whether as a question of law or of fact, it waives such right by considering a claim for disability benefits thereunder."

The point of this question is whether the defendant, by giving some consideration to the claim for benefits presented by the plaintiff, which claim was presented after the amendment to the policy which eliminated permanent total disability benefits, then had the right to say that the plaintiff was not covered by the policy. In other words, that by reason

of the conduct of the defendant it waived the change in the provisions of the policy which changes had become effective prior to the date of the alleged disability.

The discussion of this question necessarily involves that of agency, namely, as to whether or not the assured, General Motors, acted as an agent for the defendant in its dealings with the plaintiff. This question would seem to have been effectively disposed of by the United States Supreme Court in the case of *Boseman* v. *Connecticut General Life Insurance Co., supra,* wherein the court said that the employer:

"When procuring the policy, obtaining applications of employes, taking payroll deduction orders, reporting changes in the insured group, paying premiums and generally in doing whatever may serve to obtain and keep the insurance in force, employers act not as agents of the insurer, but for their employes and for themselves."

As to the question of waiver, it is argued on behalf of the plaintiff that because of the defendant company accepting the proof of claim for disability and having had further correspondence with relation to the question of disability, its time and character, it thereby waived any right to insist that the question of permanent disability had been eliminated from the contract by the amendment heretofore referred to. Certainly the defendant had a right to know and to make the necessary inquiries as to whether or not plaintiff's alleged disability had occurred while the policy provided for payments because of permanent disability or after such payments had been eliminated; the time of the alleged occurrence and its extent. Certainly by pursuing its inquiry to ascertain and determine the existence of these allegations it could not be said to have waived any provisions of the policy, as a waiver implies the existence of some provision or condition of the contract which the party alleged to have made the waiver does not insist upon the performance. Certainly there could be no waiver of a non-existing provision of the contract. The payments provided for prior to the amendment of the contract had necessarily been taken out of the picture by the amendment. Certainly no one can be said to have waived non-existing provisions of a contract.

I am, therefore, of the opinion that under the facts set forth in the stipulation in this case and the law applicable thereto, the defendant is entitled to a direction of verdict in its favor.