C. C. RASMUSSEN, Administrator, Estate of Harold W. Rasmussen, Appellee,

v.

NEBRASKA NATIONAL LIFE INSUR-ANCE CO., Appellant.

No. 53258.

Supreme Court of Iowa.

Sept. 5, 1969.
Rehearing Denied Nov. 10, 1969.

Bruce M. Snell, Jr., Ida Grove, for appellee.

MASON, Justice.

This is a law action by plaintiff as administrator of Harold W. Rasmussen's estate to recover $10,000 on a creditor group life insurance policy issued by defendant Nebraska National Life Insurance Company to Ida County State Bank, Ida Grove.

Defendant appeals from the trial court's adjudication of law points under rule 105, Rules of Civil Procedure, holding defendant's policy of insurance on decedent's life was incontestable, and afforded coverage for losses incident to heart disease or disorders since defendant is bound under the original policy with the bank. This ruling disposed of the whole case.

The issue presented involved determination as to whether decedent was covered by defendant's first or second insuring agreement with the bank.

The first policy issued by defendant sometime before August 17, 1960, provided coverage to the extent of $10,000 for each insured debtor of the bank or the amount of the debtor's indebtedness to the bank upon his death, whichever was less.

No individual policy is issued by the company to the debtor whose life is insured. The debtor does not submit an application or any other document to the insurance company, and no medical examination is made. The only document signed by the debtor is the authorization of coverage under the bank's policy. Insurance becomes effective as the bank makes loans to debtors who are within the coverage of the policy.

Any sum payable under the policy was to be paid the bank and applied to the debtor's account.

For an explanation of this variety of life insurance see 1 Appleman, Insurance Law and Practice, section 20.

August 17, 1960, plaintiff's decedent received a loan from the bank and simultaneously applied for insurance coverage under defendant's master policy with the bank.

Reimer, Boddicker & Vipond, Denison, for appellant.

As a result of an authorization signed by decedent, the policy premiums were paid through the bank by charging his account monthly with the amount thereof. Copies of the authorization and first policy are set out in plaintiff's petition.

The policy provides in part:

"Incontestability: Except for the nonpayment of premiums, this policy shall be incontestable after one year from the effective date hereof.

" * * *

"Discontinuance of Coverage: Company at any time may discontinue insuring new debtors by giving thirty days written notice thereof to Creditor. Such notice shall not affect any insurance previously made effective, while this policy is in force, provided premiums for such insurance are regularly paid when due. Insurance granted to any insured debtor hereunder shall terminate: * * * (c) upon repayment of the indebtedness in connection with which this insurance is granted. * * *."

July 23, 1965, defendant entered into a new creditor group life insurance contract with the bank. The copy of the second insuring agreement attached to defendant's answer as exhibit 1 provides in part:

"If said indebtedness is renewed or otherwise extended any insurance issued in connection with such renewal or extension shall constitute new insurance and the effective date thereof shall be the date of said renewal or extension. In no case shall any insurance originate on or after the date of first medical diagnosis known to the debtor of any disease or disorder of the heart or heart system or cancer, and if through error, oversight or otherwise, insurance is thereafter effected, the death benefit payable hereunder shall be limited to the amount of premium paid, together with interest thereon at 6% per annum, compounded annually." This coverage limitation is not contained in the first policy.

The new agreement extended the incontestability clause from one to two years. Both policies contained renewal privileges.

Harold W. Rasmussen died of a heart attack December 4, 1966, owing the bank $10,-642.92. January 20, 1967, plaintiff paid the indebtedness and received an assignment of the bank's rights and interest in the policy. On defendant's refusal to pay the face value of the policy plaintiff brought this action.

■ I. We do not review the case de novo but only on errors assigned. Rule 334, Rules of Civil Procedure, Bates v. United Security Insurance Co., Iowa, 163 N.W.2d 390, 392.

Defendant asserts as errors relied on the trial court's ruling on the adjudication of law points: (1) The insurance policies involved should be construed strictly against defendant, (2) The incontestability clause of the first policy and that contained in section 509.2(2), Code, 1966, bar the defense that the first policy was terminated by the parties thereto in accordance with its terms, (3) The first policy was not validly terminated because plaintiff's decedent did not consent to termination, (4) The first policy was not validly terminated because plaintiff's decedent was not given notice of termination, (5) Allegations of notice to plaintiff's decedent of termination of the first policy contained in Divsion III of defendant's answer are insufficient and (6) The incontestability clauses of the second policy and in section 509.2(2) bar the defense plaintiff's decedent was not within the coverage of the second policy at death.

These assignments will not be considered in the order argued.

II. Rule 105, R.C.P., provides: "The court may in its discretion, and must on application of either party, made after issues joined and before trial, separately hear and determine any point of law raised in any pleading which goes to the whole or any material part of the case. It shall enter an appropriate final order before trial of the remaining issues, adjudicating the point so determined, which shall not be questioned on the trial of any part of the case of which it does not dispose. If such ruling does not dispose of the whole case, it shall be deemed interlocutory for purposes of appeal."

In ruling on the application for adjudication of law points, only uncontroverted issues which present points of law may be determined. Unresolved factual issues prevent any judgment or determination of the whole case in such hearing. National Farmers Union Etc. Co. v. Nelson, 260 Iowa 163, 168, 147 N.W.2d 839, 843.

In answer defendant admitted its creditor group life insurance contract with the bank in effect August 17, 1960, was correctly quoted in plaintiff's petition, all payments due on this coverage were made by the bank and charged against Rasmussen's account as provided in the authorization but denied that the same policy had been continuously in effect from the issuance date until Rasmussen's death. In a separate division defendant alleged that on or about July 23, 1965, it entered into a new creditor group life insurance contract with the bank and attached a copy; this contract replaced the one set out in plaintiff's petition and when entered into terminated the August 17, 1960, *insuring agreement; it* discontinued insuring new indebtedness under the former contract; this policy was in effect from July 23, 1965, until Rasmussen's death; July 22, 1965, a medical diagnosis was made that Rasmussen had "a disease and disorder of the heart and heart system" which diagnosis was known to him on that date; all decedent's indebtedness to Ida County State Bank July 23, 1965, was repaid before his death; and decedent's indebtedness to the bank at death originated on or after September 22, 1965.

Defendant alleged in the third division decedent was notified the 1960 policy was replaced by the July 1965 policy and attached to this amendment as exhibit 2 a copy of the "Notice of Change" alleged to have been given Rasmussen and as exhibit 3 a "Certificate of Insurance and Charge Slip" alleged to have been given Rasmussen the end of each month for which a charge was made against his account for the creditor group life insurance.

In reply plaintiff denied defendant's affirmative allegations and alleged if the insurance company and bank had entered into a new insuring agreement July 23, 1965, as alleged, his decedent as beneficiary should have been entitled to the policy benefits which are the same as prayed in his petition. He further alleged the incontestability provision of the second insuring agreement and that of Code section 509.2(2) made the validity of this policy incontestable.

This Code section provides:

"A provision that the validity of the policy shall not be contested, except for nonpayment of premiums, after it has been in force for two years from its date of issue; and that no statement made by any person insured under the policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years during such person's lifetime, nor unless it is contained in a written instrument *signed by him.*"

This statutory wording corresponds with the incontestability clause contained in the original policy issued by defendant except by is provision for a two-year contestability period rather than one year.

In this stage of the pleadings plaintiff made application under rule 105, R.C.P., for separate adjudication of law points raised by his pleadings relating to the incontestability of the first policy issued or any amended, substituted, revised or newly issued policy insuring Rasmussen's life.

The court's holding defendant is bound under the original insuring agreement with the bank because the first policy was not effectively terminated is based on lack of consent by plaintiff's decedent to the termination of the first contract and lack of formal notice to Rasmussen. The court concluded decedent was entitled to a formal notice of change of coverage by termination of the earlier contract; the pleadings do not indicate Rasmussen received it; in the absence of some assent on Rasmussen's part

to substituting the old policy with the new the court was of the opinion Rasmussen thought he was paying for protection described under the original agreement since he can be assumed to have had knowledge of all its provisions and procurement of his consent to termination of the first policy is not revealed in the record.

As stated, the first policy under subdivision (c) of the discontinuance of coverage clause provides that insurance granted to any insured debtor thereunder shall terminate upon repayment of the indebtedness connected with the insurance granted. When sued on this contract the company answered by alleging that all decedent's indebtedness to the bank on July 23, 1965, was repaid before his death and the indebtedness at the time of Rasmussen's death originated on or after September 22, 1965.

■ In determining whether these allegations generate an unresolved factual issue which would prevent any judgment or determination of the whole case in a hearing under rule 105, R.C.P., we must take the well-pleaded allegations of this division of defendant's answer as true. State Farm Mutual Automobile Ins. Co. v. Nelson, Iowa, 166 N.W.2d 803.

III. We consider first whether the defense of termination is barred by the incontestability clause of the policy or statute.

The insurance company concedes the first policy is incontestable and it is barred from raising any defenses affected by the clause or statute. However, defendant argues, these incontestability provisions do not bar it from pleading an effectual termination of the contract in accordance with its terms in defense against liability on a claim under it. It maintains that in denying liability under the first policy by alleging termination of coverage the company is defending under the policy and not against it since the first policy, although conceded to be valid and enforceable, had been terminated because coverage ended before decedent's death. These provisions for termination and discontinuance of coverage are effectual parts of the insuring agreement which should be enforced according to its terms.

The company argues this premise does not involve the effect of termination of the policy on the insurance already in force on indebtedness not yet repaid but is an assertion all new indebtedness incurred after the effective date of the second contract was governed by its provisions.

Stated in other words, the insurance company contends although an incontestable provision prohibits the defense of invalidity it does not preclude a denial of coverage— the insurer can still allege terms of the policy do not cover the particular claim for neither the contractual nor statutory provision as to incontestability is applicable to the factual circumstances resulting from its asserted defense of termination of coverage.

In support of the court's ruling plaintiff, on the other hand, contends the contractual and statutory incontestability provisions bar defenses asserted. He maintains a defense must be saved by specific exception in an incontestability provision or it is unavailable after the policy becomes incontestable. Since defenses based on health were not saved in the incontestability provisions of the policy drafted by the insurance company they are barred in an action for face amount of the policy. He further urges defendant's assertions of error are mere prefaces to its defense of health, that is, Rasmussen died of heart disease, and are in fact the insurer's effort to contest the validity of the original policy even though its argument is couched in terms of termination of that policy and commencement of the new one— an attempt to avoid consequences of the incontestability provisions.

■ If the insurance company was not contesting the policy, but asking for enforcement of its specific contractual provisions—that the court declare the policy terminated by reasons of the matters pleaded—the incontestability clause would in no way bar such allegations. See as sup-

porting this statement Wilson v. Equitable Life Ins. Co., 220 Iowa 321, 262 N.W. 525, where the court held the defendant insurance company was contesting the validity of the contract.

The following statement in 5 Williston on Contracts, Third Ed., (Jaeger), section 810 (section 811 of Williston's revised edition), is relied on by other jurisdictions in determining whether the insurance company is relying on or, in fact, contesting the validity of the policy.

"In determining whether the incontestable clause is applicable to a given situation a distinction should be noted between matters of defense going to the invalidity of the whole policy on the one hand, and on the other hand provisions relating to excepted risks. The incontestable clause is intended not to enlarge the scope of the insurer's promise so as to include liability for death due to causes which are excluded either by express terms of the policy or by implication of law, but to make certain the enforceability of the promise as set out in the policy."

In an annotation in 95 A.L.R.2d 420, 422, the editors in defining a contest state:

"By the great weight of authority, a contest, within the meaning of an incontestability provision in an insurance policy, means some affirmative or defensive action taken in court to cancel the policy or prevent its enforcement, to which the insurer and the insured, or his representatives or beneficiaries, are parties, within the time prescribed by the provision."

This statement is followed by citation of authorities from some 30 state and federal jurisdictions.

In Metropolitan Life Ins. Co. v. Conway, 252 N.Y. 449, 169 N.E. 642, is this statement:

" * * * The provision that a policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years is not a mandate as to coverage, a definition of the hazards to be borne by the insurer. It means only this, that within the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken. Like questions have arisen in other jurisdictions and in other courts of this state. There has been general concurrence with reference to the answer. * * * [Citing authorities].

" * * * A contest is prohibited in respect of the validity of a policy, 'except for nonpayment of premiums and except for violation of the conditions of the policy relating to military or naval service in time of war.' * * * [W]e must distinguish between a denial of coverage and a defense of invalidity."

This case has been cited and quoted from several times by other jurisdictions.

Sanders v. Jefferson Standard Life Ins. Co., (5 Cir.), 10 F.2d 143, 144, contains this:

" * * * It cannot properly be said that a party to an instrument contests it by raising the question whether under its terms a liability asserted by another party has or has not accrued."

Citing Metropolitan Life Ins. Co. v. Conway and Sanders v. Jefferson Standard Life Ins. Co., both supra as authority, the Court in Commercial Ins. Co. of Newark v. Burnquist, (D.C.Iowa N.D.), 105 F.Supp. 920, 935, said:

" * * * These cases hold that an incontestable clause does not prevent an insurance company from resisting a claim under a policy on the ground that such coverage was not assumed by the insurer under the policy."

Neither the contractual nor statutory incontestability clause denies "to the company the right to defend against an action brought upon the policy, except in so far as the defense might rest on a denial of the validity of the policy itself. All other lines of defense remained open to it.

" * * * By the use of the term 'incontestable' the parties must necessarily mean that the provisions of the policy will not be contested, and not that the insurance company agrees to waive the right to defend itself against a risk which it never contracted to assume." John Hancock Mut. Life Ins. Co. v. Hicks, 43 Ohio App. 242, 249, 183 N.E. 93, 96. Quoting from Brady v. Prudential Ins. Co., 168 Pa. 645, 32 A. 102, 103 and Scarborough v. American National Ins. Co., 171 N.C. 353, 88 S.E. 482, 483, L.R.A.1918A, 896, Ann.Cas.1917 D, 1181.

■ We hold that by alleging facts upon which defendant bases a denial of coverage under the first policy for decedent's indebtedness existing at his death and in asserting any new indebtedness incurred by him after July 23, 1965, was covered by its second policy with the bank, it is not contesting the validity of the first contract but urging that it be enforced to the letter as provided in the discontinuance of coverage provision.

Its efforts are not to nullify the insurance contract, only to determine whether insured was in fact covered by its terms at death.

■ It was error for the court to preclude the insurance company from offering proof supporting its affirmative allegations there had been an effectual termination of the contract in accordance with its terms. The incontestable provisions do not prohibit the introduction of such evidence, if otherwise admissible.

IV. The necessity of notice to and consent of the insured before effectuation of a new contract insuring all new indebtedness incurred after July 23, 1965, are the next questions that arise.

Only the future use of the original policy to insure new indebtedness, not the present validity of that policy as to existing indebtedness, is involved in the company's alleged cancellation of the original policy by the agreement of July 23, 1965.

The bank was the policy holder. Code section 509.1(3). It and the company had reserved the right to terminate the original policy in this language in the discontinuance of coverage clause:

"Company at any time may discontinue insuring new debtors by giving thirty days' written notice thereof to Creditor. Such notice shall not affect any insurance previously made effective, while this policy is in force, provided premiums for such insurance are regularly paid when due."

If liability once attached under the first policy by reason of the happening of the contingency insured against—Rasmussen's· death—cancellation or modification of the policy could not deprive his representative of the insured's right under the policy without, of course, his consent.

However, the insurance company does not contend Rasmussen's rights and obligations under the original policy were affected by any alteration contained in the second contract while he remained insured under the first contract. They concede had he died before repaying all indebtedness originating before July 23, 1965, the company would have been obligated. They do maintain once his indebtedness was repaid the original coverage was terminated. The company maintains if it is established at trial Rasmussen's indebtedness December 4, 1965, originated after July 23, 1965, Rasmussen's benefits were then to be determined under the new contract and his consent was not essential in supplanting the original policy with the new.

In support of their divergent positions on the necessity of insured's consent to a valid exercise of this right both parties cite the annotation in 68 A.L.R.2d 249 which is concerned with group policies insuring employees.

At page 259 this statement appears:

" * * * [T]he rule supported by a majority of cases is that the employer may, before any liability attaches under the policy, validly exercise his right of can-

celing or modifying the master policy and thereby terminate the employee's coverage under the policy, notwithstanding neither the employee nor his beneficiary consented to such cancellation or modification." Following a further statement, cases from 13 jurisdictions are collected.

At page 263 cases where the opposite rule has been applied are cited. These involve Alabama, Ohio, Oklahoma, Pennsylvania and Tennessee. In referring to cases from these jurisdictions the editors state, "Only Oklahoma sees in full support of the above rule, while Alabama, Pennsylvania, and Tennessee reveal a conflict of authority on this point within each of the named jurisdictions."

Plaintiff cites Hinkler v. Equitable Life Assur. Soc., 61 Ohio App. 140, 22 N.E.2d 451, 14 Ohio Op. 182, 28 Ohio L.Abst. 435; Shears v. All States Life Ins. Co., 242 Ala. 249, 5 So.2d 808; and Aetna Life Ins. Co. v. Wilson, 190 Okl. 363, 123 P.2d 656, in support of what has been characterized as the minority view.

The soundness of the rule announced in Hinkler v. Equitable Life Assur. Soc., supra, is questioned by the Ohio court in John Hancock Mut. Life Ins. Co. v. Dressel. Ohio Com.Pl., 74 N.E.2d 629, 631, 35 Ohio Op. 161, 162, where the court said the "decision is contrary to the general rule * * *".

Shears v. All States Life Ins. Co., supra, is discussed in Metropolitan Life Ins. Co. v. Korneghy, 37 Ala.App. 497, 503, 71 So.2d 292, 297, 68 A.L.R.2d 239, where the court noted although they were in accord with the Shears holding under the facts there, " '[i]t is a general rule * * * that the positive authority of a decision is coextensive with the facts on which it is made'." The opinion then proceeded to make the distinction by pointing out the coverage benefits in Shears had accrued, if at all, prior to the date of cancellation. In Hill v. Metropolitan Life Ins. Co., 266 Ala. 285, 96 So.2d 185, 196, the Alabama Supreme Court concluded that its opinion in Shears

had been correctly distinguished by the court of appeals. In a special concurring opinion in Blue Cross-Blue Shield of Alabama v. Turner, 43 Ala.App. 542, 195 So. 2d 807, the writer stated he would not rely on Shears because of its being later restricted by Hill v. Metropolitan Life Ins. Co., supra.

Defendant cites as support for the majority view Metropolitan Life Ins. Co. v. Korneghy, supra; Hill v. Metropolitan Ins. Co., supra; Lancaster v. Travelers Ins. Co., 54 Ga.App. 718, 189 S.E. 79; Mason's Adm'x v. Prudential Ins. Co., 291 Ky. 347, 164 S.W.2d 386; Kloidt v. Metropolitan Life Ins. Co. of America, 18 N.J.Misc. 661, 16 A.2d 274; Miller v. Travelers Ins. Co., 143 Pa.Super. 270, 17 A.2d 907; Clayton v. National Electric Products Corp., 421 Pa. 375, 219 A.2d 595; and Fagan v. John Hancock Mutual Life Ins. Co., (D.Kan.), 200 F.Supp. 142.

The rule of the cases supporting each view on this question has been applied where contributory as well as noncontributory policies are involved although there are some statements to the effect the rule not requiring consent should only apply to the noncontributory insuring agreements. See the annotation in 68 A.L.R.2d, supra, at 258–263.

The editors also state no case had been found suggesting a distinction between cases involving a cancellation of a group policy and those involving its modification.

Although cases collected in the annotation cited by the parties support the two positions announced as to necessity of consent, we have found none which involves the factual situation here.

The net effect of the July 23, 1965, termination and replacement by a new policy of insurance was simply to prevent any new insurance from being written under the old policy. All new indebtedness incurred after July 23, 1965, would be governed by the provisions of the new policy. Those debtors insured under the original 1960 policy prior to July 23, 1965, still had ef-

**378**

fective insurance under that policy as long as the indebtedness remained unpaid.

 Since decedent's rights and obligations as they then existed were unaffected by the supplanting of the first policy by the second, his consent was not required before effectuation of a new policy of insurance on all new indebtedness incurred after July 23, 1965

V. In cases considering contracts of insurance involving employees and employers it has been stated the question of notice to or knowledge by the employee of the cancellation or modification of the master policy, while related to, is clearly distinct from the question of consent. See 68 A.L.R.2d, supra, at 266.

Those policies either afford life insurance on the employee or benefits for permanent or partial disability. Jurisdictions requiring notice to or knowledge by employees take the view that timely notice should be given the employee of any amendments to or cancellation of the master policy, such requirement being more in accord with fair treatment of the insured employee. They further reason the employee should be given opportunity to timely exercise any conversion privilege which may be available to him under the terms of the policy or, where such privilege is not given, in order that he may seasonably obtain similar insurance protection on his own account elsewhere.

As previously stated, these cases are factually distinguishable. Rasmussen received all protection he purchased in connection with his August 17, 1960, loan. As provided in the policy, when this loan was paid the coverage terminated. The trial court assumed in his ruling decedent had knowledge of all provisions of the contract. Rasmussen was therefore afforded opportunity to obtain other life insurance if he wished. The fact the insurer and the bank agreed to enter into a new agreement affecting loans made after its inception did not modify or cancel this opportunity in any manner.

We therefore hold that notice to or knowledge by Rasmussen was not essential to an effective modification of the first policy by the insurer and policy holder.

VI. Accordingly this case is remanded for a factual determination on the questions whether decedent did in fact repay all his bank indebtedness owing July 23, 1965, and whether all bank debts outstanding at his death were new debts incurred after September 22, 1965. Such will be determinative as to which policy of insurance was in effect at Rasmussen's death and the date of the policy's issuance.

With instructions to proceed in accordance with this opinion, the cause is

Reversed and remanded with directions.

All Justices concur except SNELL, J., who takes no part.