[Civ. No. 2663. Fifth Dist. July 22, 1976.]

WILLIAM ARTHUR KLEPPER, JR., as Co-executor, etc., et al.,
Plaintiffs and Appellants, v.
STANDARD LIFE INSURANCE COMPANY OF INDIANA,
Defendant and Respondent.

COUNSEL

Shepard, Olson, DeVaney, Turner, Dietrich & Milnes and Michael A. Milnes for Plaintiffs and Appellants.

McCormick, Barstow, Sheppard, Coyle & Wayte and James H. Barstow for Defendant and Respondent.

OPINION

BROWN (G. A.), P. J.—This is an action by the co-executors of the estate of W. A. Klepper, deceased, to recover the proceeds of a credit life insurance policy issued by Standard Life Insurance Company of Indiana on the life of the decedent. On the basis of the express provisions of the policy and pursuant to statutory directive, we have concluded that the trial court was correct in denying recovery.

The facts are stipulated and in substance show that on January 3, 1973, the decedent, W. A. Klepper, made an application to the National Bank of Agriculture for a revolving line of credit of $15,000 to finance accounts receivable in his farm supply business. The application was approved and a maximum line of credit of $15,000 was established, to expire November 1, 1973. In connection with the transaction, the decedent executed a promissory note, security agreement, disclosure statement, and a schedule of assigned accounts receivable.

The bank had authority to provide credit life insurance to its customers up to a maximum of $10,000 pursuant to a master group credit life policy issued by respondent Standard Life Insurance Company of Indiana. Upon application, deceased was issued a level term policy by the bank with a face amount of $10,000, payable to the National Bank of Agriculture,[1] as primary beneficiary, designated an "irrevocable Creditor Beneficiary," and the estate of W. A. Klepper as second beneficiary. A premium of $63.30 was paid to the insurance company by decedent.

W. A. Klepper died on March 23, 1973. Prior to his death he never requested or received any funds under the credit agreement.

The unique features and purpose of credit life insurance are recognized in the statutory provisions governing that type of insurance (see Ins. Code, §§ 779.1-779.26)[2] and the regulations of the Insurance Commissioner of the State of California (Cal. Admin. Code, tit. 10, §§ 2248.1-2248.25),[3] as well as by the terms of the policy. ■ The whole purpose of credit life insurance is to provide funds to pay off a specified debt of the insured if he should die while the debt is outstanding. As such, and subject to the statutory provisions, the insurance company has no obligation to pay until some debt has been incurred, and the obligation terminates when the debt is satisfied.

It is clear under the provisions of section 779.4, subdivision (a), that the amount of the insurance cannot exceed the amount of the unpaid indebtedness.[4] Subdivision (a) of that section provides in pertinent part:

[1] The bank was originally joined as a codefendant and filed a disclaimer of any interest in the insurance proceeds. At oral argument counsel stipulated that the National Bank of Agriculture has no interest in the proceedings and can be considered to be formally dismissed as a party defendant.

[2] All code sections hereinafter referred to shall be Insurance Code sections unless otherwise indicated.

[3] The California Administrative Code provisions did not become effective until June 2, 1973; they are cited for illustrative purposes only.

[4] Definitions pertinent to this decision are contained in section 779.2. The portions of that section relevant here read as follows:

"(1) 'Credit life insurance' means insurance on the life of a debtor pursuant to or in connection with a specific loan . . . .

". . . . . . . . . . . . . . . . .

"(3) 'Creditor' means the lender of money . . . .

"(4) 'Debtor' means a borrower of money . . . .

"(5) 'Indebtedness' means the total amount payable by a debtor to a creditor in connection with a loan or other credit transaction."

"(a) Credit Life Insurance. The initial amount of credit life insurance shall not exceed the total amount repayable under the contract of indebtedness and, where an indebtedness is repayable in substantially equal installments, the amount of insurance shall at no time exceed the scheduled or actual amount of unpaid indebtedness whichever is greater. In the case of revolving loan or revolving charge accounts the insurance shall not at any time exceed the unpaid indebtedness."

The limitations of this section have been interpreted by the Attorney General to refer to the "actual indebtedness and not mere commitments to lend," and to mean that the indebtedness does not arise until the debtor receives funds. (See 36 Ops.Cal.Atty.Gen. 322, 325-326; see § 779.2, subd. 5 (fn. 4, *ante*).)

Precise substantiation of this interpretation is contained in section 779.5, which provides in relevant part: "The term of any credit life insurance or credit disability insurance shall, subject to acceptance by the insurer, commence on the date when the debtor becomes obligated to the creditor or the date the debtor applies for such insurance, whichever is later . . . . If the indebtedness is discharged due to renewal or refinancing prior to the scheduled maturity date, the insurance in force shall be terminated before any new insurance may be issued in connection with the renewed or refinanced indebtedness. In all cases of termination prior to scheduled maturity, a refund shall be paid or credited as provided in Section 779.14."[5]

The policy provisions conform with the statutory requirements. The policy provides in relevant part:

### "EFFECTIVE DATE OF INDIVIDUAL COVERAGE

"Insurance on the life of any debtor insured hereunder with respect to a particular debt shall become effective concurrently with the inception of such indebtedness to the Creditor or the effective date of this Policy, whichever is later. . . .

### "AMOUNT OF INDIVIDUAL COVERAGE

"The amount of insurance payable hereunder shall be equal to the total amount of the outstanding unpaid indebtedness, not to include

---

[5]The judgment herein ordered that the insurance company refund to the estate of the decedent the $63.30 premium paid.

more than two (2) delinquent payments, of the debtor to the Creditor, or $10,000.00, whichever is less. . . .

"TERMINATION OF INDIVIDUAL COVERAGE

"The insurance on the life of a debtor shall automatically terminate on the earliest of the following dates:

"1. The date the indebtedness of the debtor terminates, prior to the scheduled maturity date, because of prepayment by the debtor or in connection with the renewal or refinancing thereof."

Thus both the clear terms of the statute and the precise terms of the policy itself mandate the result arrived at by the trial court. Since there were no funds advanced or debt owed at the time of decedent's death, recovery is precluded.

Appellants' only answer to the cogency of these statutory and contractual provisions is their reliance upon the case of *Elfstrom* v. *New York Life Ins. Co.* (1967) 67 Cal.2d 503 [63 Cal.Rptr. 35, 432 P.2d 731]. However, that reliance is misplaced as the facts and the issues in that case are inapposite to those before the court herein. That case involved an ordinary group life insurance policy, not a credit life insurance policy which, as we have pointed out, is circumscribed by numerous special statutory provisions. The case held in substance that even though the certificate of insurance had been issued by the employer to an unqualified employee through clerical error, the issuing employer was the agent of the insurance company and the act of the employer in accepting premiums on behalf of the insurer from the employee estopped the insurer from claiming that the employee was not qualified for coverage.

There is no issue in the instant case regarding the validity or effectiveness of the policy issued. The issuance of the policy, the authority of the National Bank of Agriculture and the validity of the policy are conceded. The issue here is solely and simply one of statutory and policy interpretation to determine whether there is any obligation to pay before an indebtedness has arisen. Pursuant to the policy provisions

and statutory mandate, we have resolved that issue against the appellant; as did the trial court.

The judgment is affirmed.

Gargano, J., and Thompson, J.,* concurred.

A petition for a rehearing was denied August 16, 1976.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.