ANGELA VERBAERE *et al.*, Plaintiffs-Appellees, v. LIFE INVESTORS INSURANCE COMPANY OF AMERICA, Defendant-Appellant.

First District (3rd Division)   No. 86—2993

Opinion filed June 17, 1987.

Peterson, Ross, Schloerb & Seidel, of Chicago (J. Robert Geiman and Daina B. Van Dervort, of counsel), for appellant.

David L. Lee, of IIT/Chicago-Kent College of Law, of Chicago, for appellees.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Defendant Life Investors Insurance Company of America appeals from an order of the trial court denying its motion for summary judgment and granting plaintiffs Peter and Angela Verbaere's cross-motion for summary judgment. Defendant claims that its obligation under a credit insurance policy issued to the Community Bank of Homewood-Flossmoor terminated upon notification from the bank that plaintiffs' indebtedness to the bank had been discharged.

In April 1978, plaintiffs borrowed $15,500 from the bank for the purchase of a motor home. As collateral for this loan, the bank took a second mortgage on plaintiffs' residence and a purchase money security interest in the motor home. Plaintiffs secured credit disability and credit life coverage from three companies, one of which was defendant. The total coverage secured met the amount of plaintiffs' indebtedness to the bank for the loan. Defendant issued a certificate to the bank guaranteeing payment to the bank of $125 per month for a maximum of 10 years should death or disability render plaintiffs unable to make payments on their loan.

In December 1978, plaintiff Peter Verbaere became totally disabled. Defendant commenced monthly payments of $125 to the bank and continued to make payments through October 1982.

In March 1982, plaintiffs contracted to sell their residence. In order to clear title, plaintiffs needed to obtain a release of the second mortgage which the bank held as part of the security on the motor home purchase plan. Plaintiffs and the bank agreed to substitute an amount of cash equal to the remaining balance on the motor home loan for the second mortgage on their home. In accordance with this agreement, plaintiffs deposited a check in the amount of $8,754.84, the outstanding balance of their loan, in a non-interest-bearing account at the bank, and the bank released the mortgage.

In October 1982, the bank, allegedly in breach of its agreement with plaintiffs, seized the deposit being held as collateral on the motor home loan and paid the loan in full. In an earlier appeal, this court held that plaintiffs stated a valid cause of action against the bank in their charge that the bank breached its contract with plaintiffs by seizing the collateral deposited with the bank in exchange for release of the second mortgage on the residence. (*Verbaere v. Community Bank* (1986), 148 Ill. App. 3d 249, 498 N.E.2d 843.) That matter apparently is pending in the trial court, but we agree that the bank's alleged independent breach of contract and the circumstances of that transaction have no effect on defendant's obliga-

tion under the insurance contract.

In any event, the bank notified defendant of the discharge of plaintiffs' indebtedness on October 12, 1982, resulting in defendant's termination of monthly payments. Defendant invoked the cancellation provision of the insurance policy which states:

> "CANCELLATION: If through prepayment, renewal, refinancing, or otherwise, the indebtedness in connection with which this insurance is written, is discharged prior to its scheduled maturity date, the insurance hereunder will be cancelled and a refund granted to the Insured calculated in accordance with a refund formula known as the Sum of the Digits Method or 'The Rule of 78' which formula is on file with the Insurance Department of the state in which this Policy was issued and with the Creditor."

Defendant paid plaintiffs a premium refund in the amount of $600.75, and no further payments were made to either the bank or plaintiffs. In this action against defendant, plaintiffs asserted that after learning the debt was discharged, defendant was obligated under the policy to make payments directly to plaintiffs.

In granting summary judgment in favor of plaintiffs on their breach of contract action, the trial court focused on a provision of the insurance policy entitled "Beneficiary" to reach the determination that defendant was obligated to continue making payments to plaintiffs. The language of this provision states:

> "BENEFICIARY: All proceeds payable under this policy as the result of the disability of an Insured Obligor are payable to the Creditor to the extent of its interest and the balance, if any, shall be paid to the Obligor, if living, or to the estate of the Obligor."

The trial court concluded that in order for the above provision to have any significance, the policy must have contemplated the situation in which the obligor, under a continuing disability, would be entitled to receive direct payment after the debt has been discharged in part or in full.

Under the undisputed facts, the only issue before us is whether plaintiffs are entitled by law to continued payments from defendant. By the terms of the group policy insuring plaintiffs' loan, defendant agreed that in the event one of the plaintiffs became totally disabled, it would pay benefits to the bank towards satisfaction of plaintiffs' indebtedness to the bank. Both sides agree that the purpose of such credit disability insurance is to indemnify a disabled debtor or obligor for payments becoming due a creditor. Peter Ver-

baere qualified for insurance benefits under this group policy when he became totally disabled in 1978. It is also undisputed that defendant began making payment upon Peter's disability and only ceased making payments upon notification by the bank that plaintiffs' debt had been discharged.

On appeal, defendant contends that pursuant to the cancellation provision of the policy, its obligation terminated when it was advised that the loan was paid off, regardless of the circumstances under which the debt was discharged. Defendant claims that with no outstanding debt, there was no credit to insure and, thus, its liability terminated. Plaintiffs counter that their right to benefits under the contract vested at the time Peter became disabled and this right continued because he was still disabled at the time the debt was paid.

We find that this court's holding in *Vogelsang v. Credit Life Insurance Co.* (1970), 119 Ill. App. 2d 67, 255 N.E.2d 479, is dispositive of the law governing this case. In *Vogelsang*, a plaintiff who was insured under credit disability insurance became disabled and attempted to collect under the policy. An affirmative defense offered by defendant insurance company was that the underlying obligation was paid off before the claim was made. Plaintiff admitted the obligation was paid by the time the suit was filed but not when notice of the claim was filed with defendant. The trial court held that payment of the underlying debt barred plaintiff's cause of action. On appeal, defendant conceded that the trial court's holding could not be supported and the court held that if this were the only issue in the case, summary reversal would be in order. On page 71, the court stated that "it is the onset or commencement of the disability during the period that the policy is in effect which is the condition precedent upon which the liability of the company depends." 119 Ill. App. 2d 67, 71, 255 N.E.2d 479.

Implied also in the *Vogelsang* holding is the determination that payment of the debt after disability does not affect plaintiff's right to benefits. The *Vogelsang* facts are analogous to the case before us. Defendant became obligated when plaintiff became disabled. The debt was paid off while plaintiff was still disabled and the liability of defendant continued. We therefore hold that payment of the debt while plaintiff is still disabled does not affect plaintiffs' entitlement to benefits under the insurance contract.

We also believe that the wording of the provision in the policy entitled "Beneficiary" reveals that defendant was still obligated to plaintiffs. For this provision to have any meaning, the policy con-

templated the situation which has occurred here. We find it unlikely that a party would overinsure a debt in order to be entitled to a balance of money after the creditor's interest has been paid. We agree therefore that for the provision to have any effect, the situation could occur, such as has come about in the present case, where the creditor's interest has been satisfied and the balance owing is to be paid directly to the obligor.

Defendant argues that the beneficiary provision and the cancellation provision are incompatible within the entire scheme of the policy. As stated above, under the provision entitled "Beneficiary," direct payments to the obligor are justified if the underlying debt has been paid in part or in full, as long as the insured is still disabled. The cancellation provision does not render this interpretation a nullity. The cancellation provision would go into effect in the common instance that the contingency upon which the insurance depends, death or disability, does not occur, and the debt is prepaid, refinanced or renewed, in which case the insurance coverage provided is cancelled. We believe that this is a proper integration of the two clauses and a proper reading of the intent of the contract in its entirety.

The cases relied upon by defendant to support termination of its obligation are not helpful in reaching that conclusion. *Klepper v. Standard Life Insurance Co. of Indiana* (1976), 60 Cal. App. 3d 470, 131 Cal. Rptr. 519, has no application to the present case because there, the debtor never became obligated so that the insurance never went into effect. In this regard, the court found that the insurance company has no obligation to pay until some debt has been incurred, and the obligation terminates when the debt is satisfied. This statement describes the situation where, without disability or death, the debt is paid off by the obligor. In the case before us, the debt was paid off, yet Peter was still disabled.

The other case relied upon by defendant is *Rasmussen v. Nebraska National Life Insurance Co.* (Iowa 1969), 170 N.W.2d 370. There, the administrator of decedent's estate attempted to recover under a group credit life policy issued to a bank by the insurer. The issue in *Rasmussen* involved a replacement credit insurance policy and whether the debtor paid all his indebtedness owing on the effective date of the replacement policy. The court remanded for factual findings on whether the indebtedness was paid off upon termination of the first policy. Defendant cites the case for the court's determination that plaintiff received all the protection he purchased in connection with the first loan. The court stated, "As provided in the

policy, when this loan was paid the coverage terminated." (170 N.W.2d 370, 378.) As long as the debtor did not die, and paid off his loan, then the coverage would terminate. This is no different than the policy here. Barring disability, if plaintiffs paid off the loan, then the coverage under the policy would terminate.

The *Rasmussen* court found that if liability attached under the first policy by reason of the happening of the contingency insured against, Rasmussen's death, cancellation or modification of the policy could not deprive decedent's representative of the insured's right under the policy without his consent. (170 N.W.2d 370, 376.) This rule supports plaintiffs' argument that while the contingency insured against, Peter's disability, continued, defendant continued to be obligated for repayment of the loan. This rule also supports our interpretation of the law enunciated in *Vogelsang*.

Defendant also contends that because plaintiffs accepted payment for refund of the premium pursuant to the cancellation provision, they in some way agreed that the cancellation provision terminated defendant's obligation. Defendant maintains that if it is now required to make direct payments to plaintiffs, any such payments would be without consideration since defendant refunded plaintiffs' premium. It is clear that plaintiffs did not intend cancellation of the policy by accepting the premium refund, and plaintiffs must return the refund before accepting payments on the contract from defendant.

For the foregoing reasons, the judgment of the circuit court of Cook County denying defendant's motion for summary judgment and granting plaintiffs' motion for summary judgment is affirmed.

Judgment affirmed.

RIZZI and WHITE, JJ., concur.