**SOUTHEAST WARREN COMMUNITY SCHOOL DISTRICT, Appellee,**

v.

**DEPARTMENT OF PUBLIC INSTRUCTION, Appellant.**

No. 63181.

Supreme Court of Iowa.

Nov. 14, 1979.

---

Thomas J. Miller, Atty. Gen. and Howard O. Hagen, Asst. Atty. Gen., for appellant.

John R. Phillips and Kathleen A. Reimer, Des Moines, for appellee.

Considered by REYNOLDSON, C. J., and REES, HARRIS, McCORMICK, and McGIVERIN, JJ.

McCORMICK, Justice.

This appeal concerns the right of a school district to expel a special education student. The Southeast Warren Community School District (school district) initiated regular expulsion procedures against Thomas Konrad, a special education student. Upon his mother's appeal, the Department of Public Instruction (DPI) ruled that a special education student cannot be expelled under any circumstances. In a judicial review proceeding, the district court held to the contrary, sustaining the position of the school district. We modify and affirm the decision of the district court because we hold that a special education student can be expelled, but only when special procedures are followed.

We must dispose of three preliminary issues before reaching the merits of the controversy. They relate to the ripeness of the mother's appeal to the DPI, the standing of the school district to petition for judicial review, and the mootness of the case.

*I. The mother's right to appeal.* No expulsion proceedings were actually held in this case. The superintendent of schools notified Thomas Konrad's parents by letter of April 7, 1978, that he recommended to the school board that Thomas be expelled from school for the remainder of the school year for habitual violation of school rules concerning smoking and possession of tobacco. He advised them that an expulsion hearing was scheduled for April 12, 1978, at 8:00 p. m. before a hearing board. He enclosed a copy of the district's expulsion policy which showed regular expulsion procedures would be used in the case.

Thomas's mother, Irma Konrad, commenced an action in district court in an effort to enjoin the expulsion. She obtained a temporary injunction against it. She also appealed to the DPI the district's action in setting the expulsion hearing. The district separately requested a declaratory ruling from the DPI on the issue of its right to expel a special education student. Mrs. Konrad and the school district then entered a stipulation in the district court case in which Mrs. Konrad agreed the temporary injunction could be dissolved and the district agreed it would defer the expulsion hearing until after rulings were obtained in the two proceedings before the DPI. The temporary injunction was dissolved upon joint application of the parties.

Subsequently the school district obtained a declaratory ruling from the DPI, which held the district was precluded by statute from expelling a special education student. The district did not seek judicial review of the ruling, but the DPI makes no issue of that.

Mrs. Konrad's appeal to the DPI was taken under § 281.6, The Code. In material part it provides:

A child, or his parent or guardian, or the school district in which the child resides, may obtain a review of any action or omission of state or local authorities pursuant to the procedures established in chapter 290 on the ground that the child has been or is about to be:

1. Denied entry or continuance in a program of special education appropriate to his condition and needs.

Mrs. Konrad contended Thomas was about to be denied continuance in a program of special education within the meaning of this provision because of the superintendent's recommendation that he be subjected to expulsion under procedures applicable to

regular students. She alleged she had been advised by the school district that the expulsion hearing would be held under such procedures.

■ The school district rather than the superintendent was Mrs. Konrad's adversary in her appeal. However, we understand the school board expresses no view on the merits of the superintendent's recommendation that Thomas be expelled, recognizing its duty of impartiality as potential trier of that issue. *See Keith v. Community School District*, 262 N.W.2d 249, 260–61 (Iowa 1978).

■ Although the issue is close, we believe the actions of the superintendent and school board in scheduling an expulsion hearing provided a basis for Mrs. Konrad's appeal under section 281.6(1). She believed the scheduling of the hearing under regular expulsion procedures threatened Thomas's right to continue in the special education program, and this belief was not unreasonable. The statute allows an appeal in anticipation of such an event. It does not require a parent to wait to see if the child is actually removed from the special education program.

We hold that the issue of the right of the school district to expel Thomas through regular procedures was sufficiently ripe to permit Mrs. Konrad's appeal under the authority of section 281.6(1).

*II. The school district's standing to seek judicial review.* The DPI ruled in Mrs. Konrad's favor on her appeal, adhering to its declaratory ruling that a school district lacks authority to expel a special education student. The district filed a petition for judicial review in district court. The district court entertained the petition and ruled for the school district on the merits.

In this appeal, the DPI for the first time challenges the standing of the school district to obtain judicial review.

The petition for judicial review was filed under § 17A.19(1), The Code, which provides that "[a] person or party who has exhausted all adequate administrative remedies and who is aggrieved or adversely affected by any final agency action is entitled to judicial review thereof under this Chapter." We have said, "The provisions of § 17A.19 are jurisdictional and must be met." *Richards v. Iowa State Commerce Commission*, 270 N.W.2d 616, 619 (Iowa 1978). Because compliance is jurisdictional, we must decide the standing issue even though it was not previously raised.

■ The only point in dispute is whether the district was an "aggrieved" or "adversely affected" party within the meaning of section 17A.19(1). In *City of Des Moines v. PERB*, 275 N.W.2d 753, 759 (Iowa 1979), we approved a two-part test for generally determining when a party is aggrieved or adversely affected: (1) the party must demonstrate a "specific, personal, and legal interest" in the subject matter of the decision, and (2) the party must show this interest has been "specially and injuriously affected by the decision."

■ The DPI contends the school district cannot demonstrate a "specific, personal, and legal interest" in the subject matter of the decision. It relies on *Iowa Department of Revenue v. Iowa State Board of Tax Review*, 267 N.W.2d 675 (Iowa 1978). In that case we held the Iowa Department of Revenue lacked standing to petition for judicial review of adjudications of the Iowa State Board of Tax Review. We did so on the principle that a subordinate official or agency is not adversely affected or aggrieved by a decision of a superior official or coordinate board or tribunal in the vertical chain of agency decisionmaking. *Id.* at 678–80. This principle has been applied in school cases. *See County Board of Education v. Parker*, 242 Iowa 1, 45 N.W.2d 567 (1951); *Independent School District v. State Appeal Board*, 230 Iowa 924, 299 N.W. 440 (1941). As explained in the cases, the principle rests on a legislative goal of administrative finality in agency decisions. *See* § 290.5, The Code ("The decision of the state board shall be final.")

The doctrine of administrative finality has not barred other litigants from obtaining judicial review of agency decisions. Be-

fore enactment of the Iowa Administrative Procedure Act, certiorari was available for that purpose, although review was limited to questions of law. *See Hohl v. Board of Education,* 250 Iowa 502, 507–10, 94 N.W.2d 787, 790–92 (1959). Now section 17A.19 of the Administrative Procedure Act has supplanted certiorari as the means of obtaining review of agency action. *Salsbury Laboratories v. Iowa Department of Environmental Quality,* 276 N.W.2d 830, 835 (Iowa 1979).

Even though other litigants have had the right to judicial review, subordinate agencies and officers have been denied the right both before and after the enactment of the Administrative Procedure Act. *See Iowa Department of Revenue,* 267 N.W.2d at 677–79. However, the cases in which they have been denied standing have all involved reversals by a superior administrative authority of quasi-judicial adjudications by a subordinate authority. *Id.* at 679; 2 F. Cooper, State Administrative Law 545–51 (1965). In those cases the superior authority sits in review of a subordinate's exercise of powers which were entrusted by the legislature to the administrative discretion of the agency. The standing rule keeps disputes between the subordinate and the superior within the agency structure, somewhat like a rule which seeks to keep family fights out of court. In those situations the superior agency is given the final say.

However, a different category of cases exists in which school districts have brought original actions against the Superintendent of Public Instruction, who at the time had superior authority within the state's educational system. *See, e. g., Lewis Consolidated School District v. Johnston,* 256 Iowa 236, 127 N.W.2d 118 (1964); *Silver Lake Consolidated School District v. Parker,* 238 Iowa 984, 29 N.W.2d 214 (1947). In this class of cases the school districts have presented questions relating to the statutory authority of school officials. Their standing to do so was not questioned.

This court has long held that other litigants may bypass the administrative process when questioning the jurisdiction and statutory powers of school officials. The leading case is *Perkins v. Board of Directors,* 56 Iowa 476, 9 N.W. 356 (1881), a case which, like the present one, involved a challenge to a school district's expulsion authority. In upholding the right of the litigant to bring the case directly to court, this court said:

> The courts of the State are the arbiters of all questions involving the construction of the statutes conferring authority upon officers and jurisdiction upon special tribunals. It was certainly never the intention of the legislature to confer upon school boards, superintendents of schools, or other officers discharging *quasi* judicial functions, exclusive authority to decide questions pertaining to their jurisdiction and the extent of their power. All such questions may be determined by the courts of the State.

*Id.* at 478–79, 9 N.W. at 357. The same principle was followed in *Board of Directors v. Green,* 259 Iowa 1260, 1265, 147 N.W.2d 854, 857 (1967), and cases cited in it. ("[W]here jurisdiction and power of a board of directors of a local school district are placed in question, or in cases involving construction of statutes conferring authority upon school officers, the courts of the state are the sole arbiters.").

Even though this principle has been enunciated in the exhaustion of remedies context and has not been used as a basis for recognizing the standing of a school district to challenge a decision of the DPI, we believe the principle applies by analogy in the present situation. The standing rule should not bar a school district from access to the courts to obtain judicial determination of issues which we have held the superior agency cannot authoritatively determine. This case does not involve a petition for judicial review based on a subordinate's dissatisfaction with a superior agency's reversal of an adjudication of a matter entrusted by statute to agency discretion. Instead it involves a question of the nature and extent of the subordinate's statutory powers. We believe this is sufficient to give the school district a "specific, personal, and legal inter-

est" which has been "specially and injuriously affected by the [DPI] decision" within the meaning of the test of aggrievement approved in *City of Des Moines v. PERB.* Thus, the school district was an aggrieved or adversely affected party under section 17A.19(1).

We hold that the district had standing to obtain judicial review of the DPI decision.

■ *III. Mootness.* The parties concede this case is moot because Thomas no longer attends the Southeast Warren Community Secondary School. However, they urge us to decide the appeal under the public interest exception to the rule against deciding moot cases. We agree this case has the requisite degree of public interest under the criteria delineated in *Board of Directors v. Green*, 259 Iowa 1260, 1264–65, 147 N.W.2d 854, 856 (1967). Like that case, this one "falls within that important area involving the administration, operation, management and control of our public school system." *Id.* at 1265, 147 N.W.2d at 857.

Therefore we reach the merits.

*IV. The merits of the district court decision.* In reversing the DPI, the district court addressed only the DPI's ultimate holding that school districts lack authority to expel special education students. The court did not decide whether a special education student can be expelled on the same basis as regular students. Because Mrs. Konrad's appeal raised the second issue, we believe it must also be answered.

The DPI seeks reversal of the district court on two principal grounds. It contends the school district's expulsion authority is overridden by a statute establishing duties to special education students. It also contends the district's duty to provide special education students with placements based on the principle of least restrictive alternatives defeats its right to expel them.

■ We give weight to an agency's construction of the statutes it administers, but we must make an independent determination of their meaning. *West Des Moines Education Association v. PERB*, 266 N.W.2d 118, 124–25 (Iowa 1978).

The statutes which are alleged to be in direct conflict are sections 282.3(1), establishing a duty to provide special education programs and services for all children requiring special education, and section 282.4, stating the district's expulsion authority. Section 282.3(1) provides:

The board may exclude from school children under the age of six years when in its judgment such children are not sufficiently mature to be benefited by regular instruction, or any incorrigible child or any child who in its judgment is so abnormal that regular instruction would be of no substantial benefit to him, or any child whose presence in school may be injurious to the health or morals of other pupils or to the welfare of such school. However, the board shall provide special education programs and services under the provisions of chapters 273, 281, and 442 for all children requiring special education.

Section 282.4 provides:

The board may, by a majority vote, expel any scholar from school for immorality, or for a violation of the regulations or rules established by the board, or when the presence of the scholar is detrimental to the best interest of the school; and it may confer upon any teacher, principal, or superintendent the power temporarily to dismiss a scholar, notice of such dismissal being at once given in writing to the president of the board.

■ The DPI asserts that the last sentence of section 282.3(1) is irreconcilable with the district's expulsion power under section 282.4 and, as a specific provision, overrides it. *See* § 4.7, The Code. However, we agree with the district court that the statutes are reconcilable. In doing so, we are mindful of our duty to harmonize statutes dealing with the same subject, if possible. *See Doe v. Ray*, 251 N.W.2d 496, 501 (Iowa 1977).

■ These statutes only inferentially deal with the same subject. Section 282.-3(1) defines circumstances under which children can be denied admission to school. Section 282.4 provides authority for exclud-

ing students from school after they have been admitted. The last sentence of section 282.3(1) is a limitation on the power to exclude; it is not a limitation on the power to expel a child who has been admitted. It merely assures that programs and services will be available to all children seeking admission as special education students.

The legislative history of section 282.3(1) confirms this view. In 1974 the legislature revised Iowa's special education laws. *See* 1974 Sess., 65th G.A., ch. 1172, §§ 68–76. The goal was to provide equal educational opportunity for handicapped students. The legislature intended that special education students be placed in the regular classroom when possible and, when not possible, that the least restrictive alternative be selected. § 281.2(2), The Code; *see* Contemporary Studies Project, *Special Education: The Struggle for Equal Educational Opportunity in Iowa*, 62 Iowa L.Rev. 1283, 1418–19 (1977).

Consistent with this objective, the regular education statutes were amended in 1975. 1975 Sess., 66th G.A., ch. 153; *see* 1975 Sess., 66th G.A., H.F. 801, at 7 (explanation of bill by sponsors). The last sentence in present section 282.3(1) was added by this amendment. 1975 Sess., 66th G.A., ch. 153, § 6. Thus its purpose was to assure the availability of programs and services rather than to limit the right to expel.

Before and after the amendment, the provision permitted the district to refuse admission to "any child whose presence in school may be injurious to the health or morals of other pupils or to the welfare of such school." This authorizes denial of admission even to children otherwise eligible for special education. Having thus given the district the power to deny admission to special education students in some circumstances, it is unreasonable to believe the legislature intended to take away the right to expel them by adding the last sentence of the provision, especially when no change was made in section 282.4, the very next section in the Code.

We find no merit in the DPI's first ground of attack on the district court's decision.

The second ground is more troublesome. In section 281.2 the legislature announced its policy concerning special education students. In subsection 1, children requiring special education are said to include those with learning disabilities "or who are chronically disruptive." The legislature plainly anticipated some special education students would present disciplinary problems. In subsection 2 the legislature provided in part:

> For those children who cannot adapt to the regular educational or home living conditions, . . . upon the request of the board of directors of an area education agency, the department of social services shall provide residential or detention facilities and the area education agency shall provide special education programs and services.

DPI rules promulgated pursuant to section 281.3 establish a specific scheme for evaluation and placement recommendations by diagnostic-educational teams from the area education agency and district for children determined to be in need of special education. *See* 670 Iowa Admin.Code § 12.19(1). Annual review of placements and re-evaluations are also provided for. *Id.* § 12.19(4). These rules implement the policy in section 281.2 and are required by federal law for the state to receive federal aid for special education. *See* 45 C.F.R. §§ 121a.532–33 (1978).

In apparently the only judicial decision which has addressed the issue, a federal court held that a special education student could not be expelled because expulsion would deny the child access to alternative placements as guaranteed under provisions of federal law like those in section 281.2. *See Stuart v. Nappi*, 443 F.Supp. 1235, 1242–44 (D.Conn.1978). The *Stuart* court reasoned that the statutes establish a right of handicapped children to be educated in the "least restrictive environment." This right is implemented by the requirement that schools provide a continuum of alternative placements. The court said: "The expulsion of handicapped children not only

jeopardizes their right to an education in the least restrictive environment, but is inconsistent with the procedures established by the [Education of the] Handicapped Act for changing the placement of disruptive children. The Handicapped Act prescribes a procedure whereby disruptive children are transferred to more restrictive placements when their behavior significantly impairs the education of other children." *Id.* at 1243.

 We agree with much of the reasoning but not the conclusion of the *Stuart* court. Our legislature gave school districts the right to deny admission to children whose presence "may be injurious to the health or morals of the pupils or to the welfare of such school." § 282.3(1). In the succeeding Code section it gave districts unequivocal power to "expel any scholar from school" on grounds which include "violation of the regulations or rules established by the board" and "when the presence of the scholar is detrimental to the best interests of the school." We hold this includes power to expel a special education student.

However, we believe the policy expressed in the special education chapter, particularly in section 281.2, puts a special gloss on any expulsion proceedings involving special education students. It does not preclude expulsion, but it requires special procedures before expulsion may occur. We hold those procedures must include re-evaluation of the child by the diagnostic-educational team provided for in 670 Iowa Admin.Code § 12.19, a report and recommendation by that team to the board, and, after full hearing, a determination by the school board whether an alternative placement will meet the needs of the child and the district. Expulsion should be resorted to only when no reasonable alternative placement is available.

Therefore we agree with the district court that the school district has a right to expel special education students. However, we modify the court's holding to add that expulsion proceedings for special education students must accord full recognition to their status. The proceedings must be conducted under special procedures which assure, in accordance with statute, that the child's needs and alternative placements are fully evaluated and considered before the decision on expulsion is made.

 In the present case the school district erred in scheduling an expulsion hearing to be conducted under regular procedures. We express no view as to whether expulsion was warranted because the merits of that issue were not heard. The parties presented evidence on that issue before the DPI, but the DPI could not try the issue. It could only be tried before the local school board, which is entrusted by the legislature with the expulsion power. The authority of the DPI is limited to review of the district adjudication upon appeal taken pursuant to chapter 290.

As modified, we affirm the decision of the district court.

MODIFIED AND AFFIRMED.