STANDARD ENGINEERS AND CONSTRUCTORS, INC.

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, REGION 1; William R. Adams, Jr., Regional Administrator of the United States Environmental Protection Agency, Region 1; City of Meriden, Connecticut; and Francis Cammisa and Jack A. James, Inc.

Civ. No. H–79–629.

United States District Court, D. Connecticut.

Jan. 16, 1980.

William T. Shea, Meriden, Conn., for plaintiff.

George J. Kelly, Jr., Asst. U. S. Atty., Richard Blumenthal, U. S. Atty., Hartford, Conn., for Federal defendants.

Thomas H. Connell, Michelson, Kane, Royster & Barger, Hartford, Conn., for Francis Camissa and Jack A. James, Inc.

Morton H. Greenblatt, Asst. Corp. Counsel, Meriden, Conn., for City of Meriden.

## RULING ON MOTION TO DISMISS

CLARIE, Chief Judge.

The plaintiff, Standard Engineers and Constructors, Inc. (Standard) was an unsuccessful contract bidder on a federally funded sewer facility project sponsored by the City of Meriden. Standard now seeks declaratory and injunctive relief against further funding, construction, or other activity related to performance of the contract on which it unsuccessfully bid. The federal defendants, United States Environmental Protection Agency (EPA) and William R. Adams, Jr., Region 1 EPA Administrator, have moved to dismiss on the grounds that the Court lacks jurisdiction over the subject matter. The Court finds that Standard does not have standing to sue for the violations alleged and the federal defendants' motion to dismiss is therefore granted.

### Facts

In 1977 the defendant City of Meriden, Connecticut applied for and received a construction grant from the defendant United States Environmental Protection Agency (EPA) under Title II of the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. §§ 1281–97. With a view to utilizing this federal grant, the City publicly solicited bids for the construction of a trunk line sewer facility in Meriden.

On June 6, 1979, the City publicly opened all bids and determined that defendant Francis Camissa and Jack A. James, Inc. (Camissa & James) had submitted the lowest bid. The plaintiff Standard's bid, which was approximately $150,000 higher than the Camissa & James bid, was the next lowest bid. Camissa & James, however, failed to submit with its bid two certification forms—a "Certification of Bidder Regarding Equal Employment Opportunity"[1] and a "Certification of Nonsegregated Facilities"[2]—as required by the contract bid doc-

---

1. This form consisted of a single page document calling for the bidder to certify "whether it has participated in any previous contract or subcontract subject to the equal opportunity clause [of the federally funded contract]; and, if so, whether it has filed all compliance reports due under applicable instructions."

2. This form consisted of a single page document calling for the bidder to certify that it "does not maintain or provide for [its] employees any segregated facilities at any of [its] establishments . . . ."

uments issued to all prospective bidders. Camissa & James did not submit these certifications to the City until approximately five days after the opening of the bids, thus permitting it to compare its own bid figures with those of the other competitors before complying with the bid requirements.

After the Meriden Board of Public Works and Sewer Authority had voted to award the contract to Camissa & James, Standard filed a protest with the City pursuant to the EPA regulations governing bid protests, 40 C.F.R. § 35.939. In that protest, Standard argued that the bid submitted by Camissa & James was "nonresponsive" and "qualified" because it was not accompanied by the required certification forms. Standard further argued that by permitting Camissa & James to submit the required certification forms five days after the bids had been opened, the bidding procedure afforded Camissa & James a competitive advantage or preference over all other bidders.[3]

After a hearing before the City's Board of Public Works and Sewer Authority, the City Board voted to deny Standard's protest. Standard appealed the City's decision to the defendant EPA Regional Administrator. After both Standard and Camissa & James had been given an opportunity to submit written arguments in accordance with 40 C.F.R. § 35.939(e)(2), the Regional Administrator denied the protest on October 10, 1979, adopting the Report and Recommendation of Regional Counsel dated October 9, 1979. Standard thereupon filed the present action.

### Discussion of the Law

The federal defendants contend that the Court lacks jurisdiction over the subject matter of the present action. Before reaching the issue of whether the plaintiff has

alleged grounds sufficient to provide a basis for federal subject matter jurisdiction, the Court must determine whether the plaintiff has standing to sue for the violations alleged.

In *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940), the Supreme Court held that unsuccessful bidders lack standing to challenge federal agency action with respect to government contracts. In attempting to articulate the rationale for its decision, the Supreme Court rejected the proposition that unsuccessful bidders should be permitted to bring suit in the public interest as so-called "private attorneys general":

> "Our decision that the complaining companies lack standing to sue does not rest upon a mere formality. We rest it upon reasons deeply rooted in the constitutional divisions of authority in our system of Government and the impropriety of judicial interpretations of law at the instance of those who show no more than a mere possible injury to the public." *Perkins*, 310 U.S. at 132, 60 S.Ct. at 879.

In *Edelman v. Federal Housing Administration*, 382 F.2d 594 (2d Cir. 1967), the Second Circuit expressly followed *Perkins* and adopted the Supreme Court's rationale in ruling that "[b]idding procedures are for the benefit of the public generally and confer no private rights on the bidder." *Id.* at 597.

Several courts, beginning with the District of Columbia Circuit in *Scanwell Laboratories, Inc. v. Shaffer*, 137 U.S.App.D.C. 371, 424 F.2d 859 (D.C.Cir.1970), have since questioned the continued authority of *Perkins*. In *Scanwell*, the court ruled that an unsuccessful bidder had standing to challenge agency action in connection with the

---

**3.** It appears, as the government contends, that it was the established practice of the defendant City of Meriden and defendant EPA strictly to enforce a responsive low bid. The defendants City of Meriden and EPA ruled that Camissa & James' bid was responsive even absent the two certification forms. Camissa & James could not have escaped the contractual duties that arose when it submitted the lowest responsible bid merely by refusing to submit the required

certification forms. Camissa & James would have forfeited a substantial bond (5% of the contract price) had it refused to submit the certification forms after comparing its own bid figures with those of the other bidders. Therefore, it does not appear that the bidding procedures followed by the defendants afforded Camissa & James a material competitive advantage over the other bidders.

awarding of a governmental procurement contract. The *Scanwell* court expressly espoused the "private attorney general" theory as the primary rationale for its decision:

"[T]here is no right in *Scanwell* [the unsuccessful contract bidder] to have the contract awarded to it in the event the district court finds illegality in the award of the contract to Cutler-Hammer [the successful bidder]. Thus the essential thrust of [Scanwell's] claim on the merits is to satisfy the public interest in having agencies follow the regulations which control government contracting. The public interest in preventing the granting of contracts through arbitrary or capricious action can properly be vindicated through a suit brought by one who suffers injury as a result of the illegal activity, but the suit itself is brought in the public interest by one acting essentially as a 'private attorney general.'" *Scanwell*, 137 U.S.App.D.C. at 376, 424 F.2d at 864.

Citing *Scanwell* for authority, a number of courts have granted unsuccessful government contract bidders standing to sue. *See, e. g., Rossetti Contracting Co. v. Brennan*, 508 F.2d 1039, 1042 (7th Cir. 1975); *Merriam v. Kunzig*, 476 F.2d 1233, 1240 (3d Cir. 1973); *Wilke v. United States*, 485 F.2d 180, 182–83 (4th Cir. 1973). The Second Circuit has not ruled on the standing issue presented here since its pre-*Scanwell* decision in *Edelman v. Federal Housing Administration, supra,* in which the court held that an unsuccessful bidder lacked standing.

■ In order to determine the "authority" of the Supreme Court's *Perkins* decision in the context of the case at bar, and to resolve the standing issue presented, the Court must examine the well established test first enunciated by the Supreme Court in *Association of Data Processing Serv. Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1971). Under the Supreme Court's ruling in *Data Processing*, a complainant has standing to challenge agency action only if (1) the complainant "alleges that the challenged action has caused him injury in fact," and (2) "the

interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Data Processing*, 397 U.S. at 152–53, 90 S.Ct. at 829–30.

■ Section 10 of the Administrative Procedure Act (APA), 5 U.S.C. § 702 does not, as the plaintiff seems to contend, eliminate the requirement that a party meet the *Data Processing* test for standing. *See Sierra Club v. Morton*, 405 U.S. 727, 733, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Section 10 of the APA provides merely that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action *within the meaning of a relevant statute,* is entitled to judicial review thereof." (emphasis added). As the Sixth Circuit has recognized,

"[s]tanding is conferred by Section 10 only when a relevant statute indicates congressional intent that the person or firm seeking review comes within the zone of interests sought to be regulated or protected. Absent such a congressionally created exception, the general rule of *Perkins v. Lukens Steel, supra,* that a disappointed bidder has no [standing to challenge] the government's award of a procurement contract retains its validity." *Cincinnati Electronics Corp. v. Kleppe*, 509 F.2d 1080, 1086 (6th Cir. 1975).

■ Assuming *arguendo* that the plaintiff Standard has alleged a sufficient injury in fact, the Court finds that Standard fails to meet the *Data Processing* test for standing to sue because Standard's interest is not "arguably within the zone of interests" intended to be protected by the relevant statutes and regulations promulgated thereunder. Standard argues that the federal defendants, by denying Standard's protest and approving the bidding procedure which permitted Camissa & James to submit the required certification forms after the public opening of bids, violated the Civil Rights

Act of 1964,[4] Executive Order No. 11246,[5] Title II of the Federal Water Pollution Control Act,[6] and certain Environmental Protection Agency regulations promulgated thereunder found in 40 C.F.R. §§ 8.8(j), 35.936–2, and 35–936–3. The only statutes or regulations cited by the plaintiff Standard which even arguably create a zone of protectable interest within which Standard might fall are § 1284(a)(6) of the Federal Water Pollution Control Act (FWPCA) and § 35.936–3 of the EPA regulations. Section 1284(a)(6) of the FWPCA provides as follows:

"(a) Before approving grants for any project or any treatment works under section 1281(g)(1) of this title the Administrator [of the EPA] shall determine—

.    .    .    .    .

(6) that no specification for bids in connection with such works shall be written in such a manner as to contain proprietary, exclusionary, or discriminatory requirements other than those based upon performance, unless such requirements are necessary to test or demonstrate a specific thing or to provide for necessary interchangeability of parts and equipment, or at least two brand names or trade names of comparable quality or utility are listed and are followed by the words 'or equal' ".

Section 35.936–3 of the EPA regulations provides:

"EPA's policy is to encourage free and open competition appropriate to the type of project work to be performed."

The Court recognizes that at least two courts in other districts have ruled that a bidder on an FWCPA contract is "arguably within the zone of interests" sought to be protected by the statutory and regulatory provisions quoted above (see *CCTW&M v. United States Environmental Protection Agency,* 452 F.Supp. 69, 75–76 (D.N.J.1978); *Union Carbide Corp. v. Train,* 73 F.R.D. 620,

622–24 (S.D.N.Y.1977)), but it finds the reasoning of these courts unpersuasive. The court in *CCTW&M* conceded that "the main interest sought to be protected [by the FWCPA and the regulations promulgated thereunder] is that of the public . . . ." *CCTW&M,* 452 F.Supp. at 75. The regulatory provisions under the FWCPA for open and competitive bidding procedures are intended to protect and conserve public funds by ensuring that government funded contracts are awarded only to the lowest responsible bidder. Neither the relevant provisions of the FWCPA, with its accompanying legislative history, nor the regulations promulgated thereunder, evidence a Congressional or executive intent to create an exception to the general rule of *Perkins v. Lukens Steel Co., supra,* that contract bidders lack standing to act as "private attorneys general" by bringing suit to vindicate the public interest. It is the Attorney General who is charged with bringing suit on behalf of the public.

The court in *CCTW&M* concluded that the statutory and regulatory provisions which are at issue in the present action seek not only to protect the public's interest in conserving government funds, but also to protect "the integrity of the bidding process." *CCTW&M,* 452 F.Supp. at 75. The *CCTW&M* court's pronouncement of a legislative or executive intent to protect the "integrity of the bidding process" apparently referred to the government's duty to follow its own federal statutes and regulations that govern bidding procedures. Such an interest in "the integrity of the bidding process", however, is a public interest. As discussed above, contract bidders lack standing to sue on behalf of the public interest. In the context of the present action, the Court rejects the "private attorney general" theory espoused by the District of Columbia Circuit in *Scanwell Laboratories, Inc. v. Shaffer,* 137 U.S.App.D.C. 371, 424 F.2d 859 (D.C.Cir.1970).

---

**4.** 42 U.S.C. §§ 1971, 1975a–1975d, 2000a to 2000a–6, 2000b to 2000b–3, 2000c to 2000c–9, 2000d to d–4, 2000e to 2000e–17, 2000e note, 2000f, 2000g to 2000g–3, 2000h to 2000h–6.

**5.** 30 Fed.Reg. 12319 (1965), *reprinted in* [1965] U.S. Code Cong. & Admin. News, p. 4416.

**6.** 33 U.S.C. §§ 1281–97.

Absent allegations of fraud or collusion, the Court holds that an unsuccessful contract bidder such as Standard lacks standing to sue.[7] The federal defendants' motion to dismiss is therefore granted.

SO ORDERED.

---

**7.** Because the Court has ruled that the plaintiff lacks standing to sue, it is unnecessary for the Court to examine the remaining issues raised by the parties as to whether the Court has federal jurisdiction over the subject matter.