**IOWA BANKERS ASSOCIATION,**
Appellee,

v.

**IOWA CREDIT UNION DEPARTMENT,**
Appellant.

No. 68254.

Supreme Court of Iowa.

June 15, 1983.

Thomas J. Miller, Atty. Gen., Elizabeth M. Osenbaugh, and Steven G. Norby, Asst. Attys. Gen., for appellant.

A. Arthur Davis, John A. Templer, Jr., and Jamie A. Wade of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McGIVERIN, LARSON, and SCHULTZ, JJ.

REYNOLDSON, Chief Justice.

Respondent Iowa Credit Union Department (department) appeals from district court's invalidation of five separate chapters of the department's administrative rules in this judicial review of rule-making under Iowa Code chapter 17A. We find this appeal moot as to one chapter, petitioner Iowa Bankers Association (association) lacks standing to challenge three other chapters, and the department failed to substantially comply with statutory rule-making procedures with respect to the remaining chapter. We accordingly dismiss in part, reverse and vacate in part, and affirm in part.

This is the second appeal generated by Iowa credit unions' drive to increase the permissible scope of their financial services. In *Iowa Credit Union League v. Iowa Department of Banking*, 268 N.W.2d 165 (Iowa 1978), we held their incidental powers under Iowa Code section 533.4(11) (1977) could not be interpreted to include engaging in share-draft business. Following our decision, the legislature amended Iowa Code chapter 533, defining the authority and responsibility of Iowa credit unions in making available to their patrons share-draft accounts, loans secured by real property, and branch office services. 1978 Iowa Acts ch. 1169, §§ 24, 29; 1979 Iowa Acts ch. 130, §§ 1–4. Other chapter 533 amendments related to insolvency guideline provisions, and statutory references to small employee groups to which credit union services may be made available. 1978 Iowa Acts ch. 1169, § 23; 1979 Iowa Acts ch. 130, § 6. Pursuant to these Acts, the department adopted rules comprising five chapters in the Iowa Administrative Code.[1] The association filed an Iowa Code section 17A.4(1)(b) written demand for a concise statement of principal reasons for and against adoption of each of the five chapters, in each instance within one month after the department's notice of

---

1. Rules ultimately incorporated in 295 Iowa Administrative Code chs. 7 (credit union share-draft accounts), 10 (real estate loans), and 11 (insolvency guidelines) were noticed for adoption October 31, 1979, and adopted December 20, 1979. Rules pertaining to small employee groups, 295 Iowa Administrative Code ch. 5, were noticed January 9, 1980, and adopted February 15, 1980. Branch office rules, 295 Iowa Administrative Code ch. 6, were noticed February 6, 1980, and adopted March 28, 1980.

intent, and prior to adoption. The department failed to respond to the association's demands until June 16, 1980, after the association filed its petition for judicial review.

District court found the association had standing to challenge the rules, and invalidated all five chapters, ruling the department failed to substantially comply with Iowa Code section 17A.4(1)(b). The court held this statute requires an agency to issue a concise statement of principal reasons for and against adoption at the time of adoption when a prior request is made. The department appeals.

■ We recently summarized the scope of our review in contested cases under Iowa Code chapter 17A as follows:

> The scope of that review is circumscribed by Iowa Code sections 17A.19 and .20: District court exercised appellate review and was entitled to alter or grant relief from the agency action upon those grounds specified in section 17A.19(8). Our duty is to correct errors of law made by the district court. We apply the standards of section 17A.19(8) to the agency action, to determine whether our conclusions comport with those of the district court.

*Women Aware v. Reagen,* 331 N.W.2d 88, 90 (Iowa 1983) (citations omitted). The same standard applies in this review of agency rule-making, except that district court was entitled to consider such additional evidence as it deemed appropriate, in addition to that received by the agency. *Community Action Research Group v. Iowa State Commerce Commission,* 275 N.W.2d 217, 219 (Iowa 1979); *see* Iowa Code § 17A.19(7) (1981).

## I. *Department's Motion for Partial Dismissal.*

During pendency of this appeal, the 69th General Assembly amended Iowa Code section 533.16(4), which prescribes guidelines under which credit unions may make loans secured by real property. 1982 Iowa Acts ch. 1253, § 5. The Act directed the department to issue, pursuant to Iowa Code chapter 17A, new administrative rules govern-

ing issuance of such loans. *Id.* The department rescinded 295 Iowa Administrative Code chapter 10 (1980), one chapter of the rules at issue here, and adopted new real estate loan rules pursuant to the Act. 5 Iowa Admin.Bull. 517–18 (October 13, 1982); *see* 295 Iowa Admin.Code ch. 10 (1982). The department moved for dismissal of the appeal as to the rescinded rules, on grounds any challenge to their validity is moot. We ordered the issue submitted with the appeal.

■ A case is moot if it no longer presents a justiciable controversy because the issues involved are academic or nonexistent. *Women Aware,* 331 N.W.2d at 92; *Hamilton v. City of Urbandale,* 291 N.W.2d 15, 17 (Iowa 1980). Our test is whether an opinion would be of force or effect in the underlying controversy. *Wederath v. Brant,* 287 N.W.2d 591, 595 (Iowa 1980). The department's rescission of the 1979 real estate loan rules renders academic any decision by this court as to their validity. Although the issues raised by the association regarding the adoption process employed by the department arguably meet the criteria of our public interest exception to the mootness doctrine, *see State ex rel. Turner v. Buechele,* 236 N.W.2d 322, 324 (Iowa 1975), our resolution of identical issues with respect to other rules challenged by the association will provide appropriate guidance for the public and agency officials. We dismiss so much of this appeal as pertains to 295 Iowa Administrative Code chapter 10 (1980).

## II. *The Association's Standing to Seek Judicial Review.*

District court held the association possessed standing to challenge the department's rules, based on its finding the association has "a specific interest as opposed to an interest of the community as a whole, and an interest as competitors of credit unions arguably injured by the rules."

Appealing, the department initially argues the association failed to establish its interests are within those protected by the legislature's 1978 and 1979 amendments to

Iowa Code chapter 533, urging us to recognize the "zone of interest" test adopted by the United States Supreme Court in *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184, 188 (1970).

The zone of interest inquiry urged by the department is part of a two-tier analysis comprising requirements emanating from the case or controversy provisions of United States Constitution, article III, section 2, and prudential considerations imposed by the Court itself. *Valley Forge Christian College v. Americans United For Separation of Church and State, Inc.,* 454 U.S. 464, 471–76, 102 S.Ct. 752, 758–60, 70 L.Ed.2d 700, 708–12 (1982); *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 72, 80, 98 S.Ct. 2620, 2630, 2634, 57 L.Ed.2d 595, 610, 614–15 (1978). It is not a constitutional requirement, but rather is one of the Court's prudential limitations. *Valley Forge Christian College,* 454 U.S. at 474–75, 102 S.Ct. at 760, 70 L.Ed.2d at 711; *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99–100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66, 77 n. 6 (1979).

Section 17A.19(1) of the Iowa Administrative Procedure Act (IAPA) provides in relevant part:

> A person or party who has exhausted all adequate administrative remedies and who is *aggrieved or adversely affected* by any final agency action is entitled to judicial review under this chapter.

(Emphasis added.) We have utilized a two-part test to determine whether a litigant is "aggrieved or adversely affected." A party must demonstrate a specific, personal, and legal interest in the subject matter of the agency decision, and show that interest has been specially and injuriously affected. *Southeast Warren Community School District v. Department of Public Instruction,* 285 N.W.2d 173, 176 (Iowa 1979); *City of Des Moines v. Public Employment Relations Board,* 275 N.W.2d 753, 759 (Iowa 1979).

The corresponding provision of the federal Administrative Procedure Act (APA) renders judicial review of agency action available to persons

> suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action, within the meaning of a relevant statute.

5 U.S.C.A. § 702 (West 1977). The zone of interest test has been identified by federal courts as arising from the language "within the meaning of a relevant statute." *See Marshall & Ilsley Corp. v. Heimann,* 652 F.2d 685, 696 n. 19 (7th Cir.1981), *cert. denied sub nom. Marshall & Ilsley Corp. v. Conover,* 455 U.S. 981, 102 S.Ct. 1489, 71 L.Ed.2d 691 (1982); *Shiffler v. Schlesinger,* 548 F.2d 96, 102 (3d Cir.1977); *Standard Engineers and Constructors, Inc. v. United States Environmental Protection Agency,* 483 F.Supp. 1163, 1166 (D.Conn.1980). The Supreme Court itself linked the test with the foregoing language of the federal APA:

> The question of standing ... concerns ... whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. *Thus the Administrative Procedure Act grants standing to a person "aggrieved by agency action within the meaning of a relevant statute."*

*Association of Data Processing Service Organizations, Inc.,* 397 U.S. at 153, 90 S.Ct. at 830, 25 L.Ed.2d at 188 (emphasis added); *see Gladstone, Realtors,* 441 U.S. at 100, 99 S.Ct. at 1608, 60 L.Ed.2d at 77 n. 6.

Our statutory requirement on standing to seek judicial review of agency action does not contain the qualifying language present in the federal APA. Iowa Code § 17A.19 (1981). Interpretation of the Iowa statute is a question of law, *Hamilton v. City of Urbandale,* 291 N.W.2d at 19, of which this court is the final arbiter. *Quaker Oats Co. v. Cedar Rapids Human Rights Commission,* 268 N.W.2d 862, 866 (Iowa 1978). We decline to read into the statute an intent or meaning not expressed therein, *Cedar Rapids Steel Transportation, Inc. v. Iowa State Commerce Commission,* 160 N.W.2d 825, 830 (Iowa 1968), *cert. de-*

*nied,* 394 U.S. 918, 89 S.Ct. 1189, 22 L.Ed.2d 451 (1969), or extend its terms under the guise of construction. *City of Cedar Rapids v. Moses,* 223 N.W.2d 263, 268 (Iowa 1974).

◼ Although ordinarily the primary purpose of an act is easily identified, and the objects of that purpose obviously possess standing, other purposes underlying an act often are uncertain. K. Davis, *Administrative Law of the Seventies* § 22.02–11, at 515 (1976); B. Schwartz, *Administrative Law* 466 (1976). Agency action may have impact on persons other than those who are the immediate object of the act. Schwartz, *supra,* at 467. We believe the legislature intended to make a judicial remedy available to any person or party who can demonstrate the requisite injury. Our holding finds support in decisions of other state courts that have addressed the issue. *New Hampshire Bankers Association v. Nelson,* 113 N.H. 127, 129, 302 A.2d 810, 811 (1973); *Snyder's Drug Stores, Inc. v. Minnesota State Board of Pharmacy,* 301 Minn. 28, 31–32, 221 N.W.2d 162, 165 (1974); *Atlantic Telephone Co. v. Public Service Commission,* 390 A.2d 439, 441 n. 5 (D.C.1978) (statute conferring standing on those "affected" by agency action did not implicate zone of interest test); *cf. Basilikov v. Government of District of Columbia,* 283 A.2d 816, 818 (D.C.1971) (legislative history indicated district and federal APA review provisions have same meaning despite absence of qualifying language in district APA).

The department nonetheless argues we have employed the zone of interest test in prior decisions. In *City of Des Moines,* 275 N.W.2d at 759, the municipality's public employer status enabled it to demonstrate a specific, personal interest in the Public Employment Relations Board's authority to order binding arbitration, upon the request of an employee organization, after the employer's certified budget submission date. The impact of the board's affirmative ruling on the city's future negotiations established a special, injurious effect. In *Southeast Warren Community School District,* 285 N.W.2d at 175, the school district challenged a Department of Public Instruction ruling the

district was precluded by statute from expelling a special education student. Because the extent of the district's statutory authority was at issue, we found it had a specific, personal interest that had been injuriously affected. 285 N.W.2d at 178–79. In *Northbrook Residents Association v. Iowa State Department of Health,* 298 N.W.2d 330, 331–32 (Iowa 1980), this court denied the association standing based on failure to meet its burden of proof, not because the association necessarily was required to bring itself within the definition of any statute. These cases at most demonstrate our rule a party must show some interest distinguishable from that of the general public, and injury to that interest has been or will be sustained—not that the party is the primary object of the agency action. We hold the federal zone of interest test does not apply in determining standing under Iowa Code section 17A.19.

◼ The department also contends the association failed to show a specially and injuriously affected, special, personal, and legal interest in the agency action under the test we enunciated in *City of Des Moines,* 275 N.W.2d at 759. Unrebutted testimony supported district court's finding that credit unions compete with banks in providing similar services. The association's competitor status distinguishes its interest from that of the community as a whole, and demonstrates the requisite specific, personal, and legal interest in the agency's rule-making. The only evidence presented regarding a special, injurious effect to the association's interest, however, was unrebutted testimony some banks have lost business as a result of credit union share-draft business. The association failed to show injury, or potential injury, as a result of the rules regarding loans secured by real estate, insolvency, small employee groups, or branch offices. This failure precludes assertion of jurisdiction with regard to these rules. *Northbrook Residents Association,* 298 N.W.2d at 332.

◼ The association's showing of past lost business due to credit union share-draft business is sufficient, however, to

demonstrate a special, injurious effect to its competitive interest. Only a likelihood or possibility of injury need be shown. A party need not demonstrate injury will accrue with certainty, or already has accrued. *See City of Des Moines*, 275 N.W.2d at 759 (effect on future negotiations); *Interstate Broadcasting Co. v. Federal Communications Commission*, 285 F.2d 270, 272–73 & n. 1 (D.C.Cir.1960); *Hall v. Planning Commission*, 181 Conn. 442, 445, 435 A.2d 975, 976 (1980). It may be true, as the department alleges, that the gravamen of the association's complaint is the legislative enactment, rather than the department's rules promulgated pursuant to those statutes. This contention goes to the merits of the association's challenge to the rules, and not to its standing to bring the challenge.

■ The association contends the legislature has "preselected trade associations with twenty-five or more members as persons always having standing" to challenge agency action. It bases this argument on Iowa Code section 17A.2(6), which defines "person" to include associations for purposes of the IAPA, and section 17A.4, which provides in relevant part:

> 1. Prior to the adoption, amendment, or repeal of any rule an agency shall:
>
> . . . .
>
> b. Afford all interested persons not less than twenty days to submit data, views or arguments in writing. If timely requested . . . by an association having not less than twenty-five members, the agency must give interested persons an opportunity to make oral presentation.

Including association within the definition of "person" statutorily recognizes an organization's capacity to represent its members' views. It does not, however, alter the necessity to show adverse effect or aggrievement. Iowa Code section 17A.19 renders these requirements separate and distinct. *Iowa Department of Revenue v. Iowa State Board of Tax Review*, 267 N.W.2d 675, 678 (Iowa 1978). Neither does the automatic right to make oral presentations during the rule-making process exempt associations from demonstrating ad-

verse effect or aggrievement. Section 17A.4(1)(b) merely grants the opportunity to be heard to "literally anyone who cares enough to do so." A. Bonfield, *The Iowa Administrative Procedure Act: Background, Construction, Applicability, Public Access to Agency Law, The Rulemaking Process*, 60 Iowa L.Rev. 731, 852 (1975). The adverse effect or aggrievement requirement is applicable to every party to agency action. Iowa Code § 17A.19(1); *Iowa Department of Revenue*, 267 N.W.2d at 678.

We hold the association has standing to challenge 295 Iowa Administrative Code chapter 7 (share-draft accounts), but failed to show standing to challenge the remaining rules at issue.

III. *Concise Statement of Principal Reasons.*

■ Iowa Code section 17A.4(1)(b) provides that before adoption, amendment, or repeal of any rule:

> If requested to do so by an interested person, either prior to adoption or within thirty days thereafter, the agency shall issue a concise statement of the principal reasons for and against the rule it adopted, incorporating therein the reasons for overruling considerations urged against the rule.

District court interpreted this provision as requiring promulgation of a concise statement at the time a rule is adopted, when a request is made under section 17A.4(1)(b) before adoption.

At the threshold we note comparable provisions in both the federal APA and the Model State APA differ from Iowa Code section 17A.4(1)(b). *See* 5 U.S.C.A. § 553(c) (West 1977) ("agency shall incorporate in the rules adopted a concise general statement"); Model State Administrative Procedure Act § 3, 14 U.L.A. 387 (1980) ("Upon adoption of a rule, the agency, if requested . . . shall issue a concise statement . . . ."). Cases decided by federal courts, and courts in states whose administrative procedure acts mirror the Model APA on this point,

therefore possess limited value in interpreting our statute. *Camputaro v. Stuart Hardwood Corp.,* 180 Conn. 545, 551, 429 A.2d 796, 799 (1980); *State ex rel. Edmisten v. J.C. Penney Co.,* 292 N.C. 311, 315–16, 233 S.E.2d 895, 898–99 (1977); *Rish v. Theo Bros. Construction Co.,* 269 S.C. 226, 232, 237 S.E.2d 61, 63 (1977).

Both the Model APA and the federal APA were considered during drafting of the IAPA, A. Bonfield, *supra,* at 750–51, yet the specific time constraints included in these acts were not incorporated in the IAPA. Iowa Code § 17A.4(1)(b). We refuse to read into our statute a meaning not expressed therein, *Cedar Rapids Steel Transportation, Inc.,* 160 N.W.2d at 830, in particular where the statute adopted fails to incorporate language from legislation upon which it is based. *Cf. Iowa State Education Association—Iowa Higher Education Association v. Public Employment Relations Board,* 269 N.W.2d 446, 448 (Iowa 1978); *Chelsea Theater Corp. v. City of Burlington,* 258 N.W.2d 372, 374 (Iowa 1977) (striking of provision before enactment indicates statute should not be construed to include it). Our conclusion finds support in the legislature's incorporation of specific time constraints in other parts of the IAPA, notably the rule-making procedure under section 17A.4. *See, e.g.,* Iowa Code §§ 17A.4(1)(a) (notice of rule-making intent required thirty-five days in advance); 17A.4(1)(b) (adoption of rule or termination of proceedings not later than 180 days after later of notice or last oral presentation); 17A.4(1)(c) (economic impact estimate due fifteen days before adoption, amendment, or repeal of rule). Had the legislature intended a specific time constraint to apply here, we think it would have included one. *Trabue v. State,* 164 Ind.App. 409, 411–12, 328 N.E.2d 743, 744 (1975) (per curiam); *In re Adoption of Voss,* 550 P.2d 481, 485 (Wyo.1976); *see North Iowa Steel Co. v. Staley,* 253 Iowa 355, 357, 112 N.W.2d 364, 365 (1961) ("[L]egislative intent is expressed by omission as well as by inclusion."); 2A C. Sands, *Sutherland Statutory Construction* § 47.23 (4th ed. 1973).

Section 17A.4(1)(b) allows an interested party to request a concise statement of principal reasons at any time up to thirty days after adoption. District court's interpretation of the statute necessitates formulation of a second timeliness standard, similarly unsupported by the statutory language, to apply when a request is made *after* adoption. We are unwilling to approve such a strained construction. *Beier Glass Co. v. Brundige,* 329 N.W.2d 280, 283 (Iowa 1983); *Iowa Beef Processors, Inc. v. Miller,* 312 N.W.2d 530, 532 (Iowa 1981).

The association argues imposition of a specific time constraint is necessary to ensure a concise statement is available to facilitate judicial review. Although we agree a concise statement is useful during review to gauge *whether* the agency failed to fully consider all submissions, A. Bonfield, *supra,* at 856, we think the primary purpose of section 17A.4(1)(b) is simply to encourage the agency to do so. *See id.; Tri-State Generation and Transmission Association, Inc. v. Environmental Quality Council,* 590 P.2d 1324, 1330 (Wyo.1979); Model State Administrative Procedure Act § 3 comment, 14 U.L.A. 388 (1980). Had the legislature deemed a concise statement crucial to judicial review, it would have rendered issuance mandatory, *see* 5 U.S.C.A. § 553(c), rather than merely operative upon demand. *See* Iowa Code § 17A.4(1)(b).

We hold Iowa Code section 17A.4(1)(b) is not subject to a specific time constraint when a request is filed prior to adoption of administrative rules.

IV. *Substantial Compliance.*

District court ruled the department had not substantially complied with the section 17A.4(1)(b) concise statement requirement, on grounds there "is an independent interest in having the agencies follow the rules." On appeal, the department initially contends the association's failure to show prejudice as a result of the agency action is fatal to its challenge, on grounds Iowa Code section 17A.19(8) mandates a showing of prejudice to the petitioner. The association contends no showing of personal prejudice

was required, citing the substantial compliance provision of Iowa Code section 17A.4(3).

Our prior decisions have noted the requirement a petitioner show prejudice as a condition precedent to judicial relief from agency action. *Anstey v. Iowa State Commerce Commission,* 292 N.W.2d 380, 383 (Iowa 1980); *City of Des Moines,* 275 N.W.2d at 759; *Schmitt v. Iowa Department of Social Services,* 263 N.W.2d 739, 743 (Iowa 1978). The prejudice must be to petitioner's substantial rights, and must arise from agency action that falls within one or more of the grounds enumerated in section 17A.19(8). *See* Model State Administrative Procedure Act § 5–116 comment, 14 U.L.A. 124 (Supp.1982). Iowa Code section 17A.4(3), however, contains a more specific standard on agency rule-making:

> No rule adopted after July 1, 1975, is valid unless adopted in substantial compliance with the above requirements of ... section [17A.4].

The purpose of section 17A.4(3) is to enforce strict compliance with statutory rule-making procedures, in view of the tendency by some administrators to skirt the requirements. A. Bonfield, *supra,* at 873. The provision effectuates the general IAPA purposes of increasing public accountability of agencies, fostering public participation in rule-making, and assuring agency adherence to a uniform minimum procedure. Iowa Code § 17A.1(2). We are instructed to broadly construe the IAPA in furtherance of these purposes. Iowa Code § 17A.23.

■■■ Our goal in statutory construction is to effectuate the intent of the legislature. *Beier Glass Co.,* 329 N.W.2d at 283. We look to the object to be accomplished, the mischief to be remedied or the purpose to be served, and place upon the statute a reasonable or liberal construction calculated to effect, rather than defeat, the legislature's purpose. *Id.* We think department's argument the association was required to show personal prejudice contravenes the legislature's purpose in enacting section 17A.4(3). An agency aware that its rules

will withstand procedural invalidation absent prejudice to the complaining party will be more apt to violate IAPA rule-making provisions. Conversely, enforcement of the substantial compliance standard will encourage agency adherence to the statutory procedure, and further the IAPA purpose of increasing agency accountability to the public. Finally, requiring petitioner in a rule-making review to show prejudice under section 17A.19(8) in order to invalidate an agency rule on the basis of improper procedure would render section 17A.4(3) a nullity. We will not construe a statute containing both general and specific provisions so that part of it is superfluous. *Goergen v. State Tax Commission,* 165 N.W.2d 782, 786 (Iowa 1969).

■■■ Our inquiry under the substantial compliance standard must include not only harm suffered by the parties, but harm to persons not parties, and the interest in strict compliance with the IAPA. Probative will be the magnitude of the deviation, whether it was purposeful, and whether interested parties were prevented from participating in, or reacting to, the rule-making process. A. Bonfield, *supra,* at 873–74.

Here the agency's deviation from statutory procedure was flagrant, not merely technical. Despite the association's expressed continuing interest in the expansion of credit union authority, the agency failed to produce a concise statement of its reasons for adopting the share-draft rules until after a judicial review petition was filed—almost six months after the association's request. Countenancing such agency inaction ultimately will degrade the value of and discourage public involvement in the rule-making process. Further, concise statements tendered as late as those at issue here are of limited value. Notwithstanding the IAPA's noninclusion of a specific time requirement, a concise statement should be issued close enough in time to the rule adoption and to the request that it accurately capsulizes the agency decision process, rather than merely rationalizing a past act. *See Baltimore and Ohio Chicago Terminal Railroad v. United States,* 583 F.2d

678, 688 (3d Cir.1978), *cert. denied sub nom. Aliquippa & S.R. Co. v. United States,* 440 U.S. 968, 99 S.Ct. 1520, 59 L.Ed.2d 784 (1979); *Rodway v. United States Department of Agriculture,* 514 F.2d 809, 816 (D.C. Cir.1975).

District court properly held the department's share-draft rules, 295 Iowa Administrative Code chapter 7, invalid for lack of substantial compliance with section 17A.4(1)(b).

### V. *Motion to Adjudicate Law Points.*

In the district court review proceeding, the department applied for a rule of civil procedure 105 ruling that it was not required to incorporate statutory safeguards into its rules promulgated for credit union share-draft accounts, 295 Iowa Administrative Code chapter 7, and small employee groups, 295 Iowa Administrative Code chapter 5. District court overruled the motion, finding it was improper in a judicial review of agency action, would adversely affect its ability to rule on remaining issues, and the department had shown no prejudice. On appeal, the department contends a rule 105 motion will lie during review of agency rule-making, the issues were purely legal, and no showing of prejudice was necessary.

 Ruling on an application for adjudication of law points is not discretionary. District court "*must on application* of either party" rule on legal points raised in a pleading, if the points go to the case in its entirety or a material part thereof. Iowa R.Civ.P. 105 (emphasis added). Prejudice to the applicant does not bear on the issue whether to rule on the application. Generally, our rules of civil procedure are applicable to proceedings for judicial review of agency action except to the extent that they are inconsistent with IAPA or with the rules contained in Iowa Rules of Civil Procedure, division XVI. Iowa R.Civ.P. 331.

 In *Young Plumbing and Heating Co. v. Iowa Natural Resources Council,* 276 N.W.2d 377, 381 (Iowa 1979), we held summary judgment motions are inappropriate in judicial review of contested cases. We noted judicial review of agency action is appellate in nature, and summary judgment procedures are inconsistent with the limited scope of review under Iowa Code chapter 17A. *Id.* A motion for summary judgment requires determination of the existence of disputed fact issues, whereas judicial review of agency action normally is based on the record made before the agency. *Wisconsin's Environmental Decade, Inc. v. Public Service Commission,* 79 Wis.2d 161, 170, 255 N.W.2d 917, 923 (1977); *see Howell v. Harden,* 129 Ga.App. 200, 201, 198 S.E.2d 890, 891 (1973), *aff'd in part, rev'd in part,* 231 Ga. 594, 203 S.E.2d 206 (1974); *Markham v. Swails,* 29 N.C.App. 205, 208, 223 S.E.2d 920, 922, *cert. denied and appeal dismissed,* 290 N.C. 309, 225 S.E.2d 829, *cert. denied,* 290 N.C. 551, 226 S.E.2d 510, *cert. denied,* 429 U.S. 940, 97 S.Ct. 356, 50 L.Ed.2d 310 (1976).

 Agency rule-making is not a contested case under the IAPA. *Schmitt,* 263 N.W.2d at 743. District court was free to hear and consider such additional evidence as it deemed appropriate. Iowa Code § 17A.19(7). An application for adjudication of law points contemplates determination of solely legal issues, *see M & W Farm Service Co. v. Callison,* 285 N.W.2d 271, 274 (Iowa 1979); *Rasmussen v. Nebraska National Life Insurance Co.,* 170 N.W.2d 370, 373–74 (Iowa 1969), whereas a summary judgment motion entails determination whether there are issues of material fact, and application of law to the undisputed facts. *See Frohwein v. Haesemeyer,* 264 N.W.2d 792, 796 (Iowa 1978), *quoted in Meylor v. Brown,* 281 N.W.2d 632, 634 (Iowa 1979); Iowa R.Civ.P. 237(c). District court's role, however, remains appellate in nature. *Young Plumbing and Heating Co.,* 276 N.W.2d at 377; *see Community Action Research Group,* 275 N.W.2d at 219 (scope of review comparable to that in contested case). Iowa courts may affirm, remand for further proceedings, or reverse, modify, or grant other appropriate relief based on the agency action. Iowa Code § 17A.19(8). The IAPA thus provides a comprehensive, integrated procedure for review of action,

which an Iowa Rule of Civil Procedure 105 motion frequently would short-circuit. Such a motion is therefore inapplicable and inconsistent. *See Wisconsin's Environmental Decade, Inc.*, 79 Wis.2d at 170, 255 N.W.2d at 923; *Markham*, 29 N.C.App. at 208, 223 S.E.2d at 922. We hold district court properly refused to address the department's motion.

In summary, we hold the association's challenge to the department's 1979 real property loan rules is mooted by interim rescission. We dismiss the appeal insofar as it pertains to these rules. The association failed to show standing to challenge the department's rules pertaining to small employee groups, branch offices, and insolvency. As to these three chapters, we reverse district court's holding on standing, vacate its invalidation of the rules, and dismiss. District court's invalidation of the department's share-draft rules, 295 Iowa Administrative Code chapter 7, is affirmed.

APPEAL DISMISSED IN PART, REVERSED AND VACATED IN PART, AFFIRMED IN PART.